TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00720-CV






Walter G. Unglaub III, Appellant



v.



Board of Law Examiners of the State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 96-04656, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING







 Appellant, Walter G. Unglaub, III, appeals an order of the trial court upholding the
order of the Board of Law Examiners of the State of Texas (the "Board") denying appellant
regular licensure, revoking his previous probationary license, and issuing a new probationary
license subject to additional conditions. In nine points of error appellant directs this Court's
attention to the Board's application of the term "present chemical dependency," the procedure
governing the Board's redetermination of moral character and fitness, and the authority under
which the Board attaches conditions to probationary licenses. Though troubled by some aspects
of the probationary licensing procedure brought to light by appellant, we will affirm the order of
the trial court.


BACKGROUND

 Appellant first appeared before the Board in 1991 prior to his sitting for the Texas
Bar examination. The Board made a finding of present chemical dependency at that time. The
Board recommended appellant be allowed to sit for the bar examination and, upon passing, to
practice law under a temporary license (the "1991 license"). This temporary license was
subsequently issued, subject to several conditions. Among these conditions was the requirement
that appellant remain sober. 

 In July of 1993, appellant came again before the Board for a hearing (the "1993
hearing") regarding his temporary license. The Board found that appellant had suffered two
relapses during the prior two years, though the last episode had occurred sixteen months prior to
the 1993 hearing. The Board found that these relapses constituted evidence of appellant's present
chemical dependency, and recommended that appellant be issued a probationary license (the "1993
license") for a period of two years. Appellant's temporary license was revoked, and a
probationary license to practice law was issued subject to additional conditions. (1) 


 Prior to the expiration of his 1993 license, and in accordance with the Board's
application procedure, appellant applied for a regular license to practice law in the fall of 1995. 
The Board notified appellant that a hearing would be held on January 11, 1996 (the "1996
hearing"). In the 1996 hearing the Board sought to examine: (1) whether appellant presently
suffered from chemical dependency; (2) whether appellant's failure to abide by one or more of the
conditions placed on his 1993 license indicated he lacked the good moral character and fitness
required for regular admission to the Texas Bar; and (3) whether appellant's probationary license
should be revoked due to his failure to abide by one or more of its conditions. After the 1996
hearing, the Board issued an order once again finding that appellant "suffers from chemical
dependency as defined by Rule I(a)(5) of the Texas Government Code." The Board further found
that two specific instances of appellant's behavior--his failure to make regular payments on his
student loans and his alleged violations of the Texas Disciplinary Rules of Professional Conduct
regarding advertising--constituted evidence of a lack of trustworthiness which directly affected
his character and fitness to practice law. Finally, the Board found that this behavior, coupled with
appellant's failure to document on a weekly basis his attendance at AA meetings and attorney
support group meetings, warranted revocation of his probationary license due to a failure to abide
by the conditions of his 1993 license. The Board recommended that regular licensure of appellant
be denied, that his 1993 probationary license be revoked, and that a new probationary license (the
"1996 license") be issued subject to additional conditions. (2) Appellant brought an appeal of the
Board's order in Travis County District Court. The district court found substantial evidence in
the administrative record supporting the Board's order, and affirmed the order. Appellant appeals
from the trial court's order upholding the Board's decision.


SUBSTANTIAL EVIDENCE REVIEW

 When the Board makes a negative character and fitness determination, an applicant
is entitled to judicial review of the Board's decision. See Tex. R. Governing Bar Admission 15(i);
see also Board of Law Examiners v. Allen, 908 S.W.2d 319, 321 (Tex. App.--Austin 1995, no
writ). The reviewing court may affirm or remand the matter to the Board depending on whether
the decision is "reasonably supported by substantial evidence." Tex. R. Governing Bar Admission
15(i)(5). In conducting a substantial-evidence review, we must first determine whether the
evidence as a whole is such that reasonable minds could have reached the conclusion the agency
must have reached in order to take the disputed action. Texas State Bd. of Dental Examiners v.
Sizemore, 759 S.W.2d 114, 116 (Tex. 1988), cert denied, 490 U.S. 1080 (1989); Texas Health
Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984). We may
not substitute our judgment for that of the agency and may consider only the record on which the
agency based its decision. Sizemore, 759 S.W.2d at 116. The appealing party bears the burden
of showing a lack of substantial evidence. Charter Medical, 665 S.W.2d at 453. The appealing
party cannot meet this burden merely by showing that the evidence preponderates against the
agency decision. Id. at 452. If substantial evidence would support either affirmative or negative
findings, we must uphold the agency decision and resolve any conflicts in favor of the agency
decision. Auto Convoy Co. v. Railroad Comm'n, 507 S.W.2d 718, 722 (Tex. 1974).


DISCUSSION

The Board of Law Examiners

 The Texas Supreme Court maintains the exclusive authority to issue licenses to 
applicants seeking admission to the State Bar of Texas. Tex. Gov't Code Ann. § 82.021 (West
1998). The Board, however, acting pursuant to the authority of the supreme court, supervises bar
admissions and thereby plays a key role in maintaining the integrity and character of the Texas
Bar. See Board of Law Examiners v. Stevens, 868 S.W.2d 773, 776 (Tex. 1994). The supreme
court vests the Board with considerable discretion in evaluating applicants based upon the
promulgated admission standards. See id. Bar admission affirmatively requires "good moral
character" and "fitness" to practice law. Id.; see also Tex. R. Governing Bar Admission 4(a). 
It is the Board's duty to evaluate each applicant's present moral character and fitness before
making a recommendation to the supreme court regarding licensure. See Tex. Gov't. Code Ann.
§ 82.004 (West 1998).

 Prior to 1991, the Board had authority to recommend only regular licenses; an
applicant either passed the bar and possessed the requisite good moral character and fitness to
practice law, or the applicant failed one or more of these necessary standards and could not be
licensed. In 1991, the Legislature made extensive changes to the enabling statutes of the Board,
allowing the Board to recommend probationary licenses for those applicants suffering from present
chemical dependency. Act of June 15, 1991, 72d Leg., R.S., ch. 576, § 6, 1991 Tex. Gen. Laws
2057-60. Since 1991, the Board's enabling statutes provide that the Board may not deny a person
a probationary license to practice law solely because that person suffers from a chemical
dependency. Tex. Gov't Code Ann. § 82.038(d)(1) (West 1998); see also Tex. R. Governing Bar
Admission 16(b). Upon issuance of a probationary license, the Board must specify conditions
designed to protect the public from the potential harm the person might cause. (3) See Tex. Gov't
Code Ann. § 82.038(e) (West 1998); see also Tex. R. Governing Bar Admission 16(c). Thus, the
Board must walk a fine line between the Legislature's intent to provide a sensitive method for
dealing with the difficult problem of chemical dependency in the profession and the need to protect
members of the public from attorneys without the capacity to provide them with competent
service.


Present Chemical Dependency

 In making a fitness determination, the Board seeks to exclude from the practice of
law any person having a mental or emotional illness or condition which would be likely to prevent
the person from carrying out duties to clients, courts, or the profession. Tex. R. Governing Bar
Admission 4(c). The fitness required is a present fitness, and prior mental or emotional illnesses
or conditions are relevant only so far as they indicate the existence of a present lack of fitness. 
Id.; see also Allen, 908 S.W.2d at 322. Thus, when the Board makes a redetermination of a
previously chemically dependent probationary licensee's fitness to practice law, the Board must
establish a present chemical dependency (4) to justify finding a continued lack of fitness on that basis.

 Evidence in the administrative record of the 1996 hearing demonstrates appellant's
long history of alcohol abuse. He began attending AA meetings in 1986, five years before his
1991 hearing before the Board. The 1993 hearing established that appellant had relapsed twice
during the time period of his 1991 temporary license. However, the administrative record of the
1996 hearing also demonstrates almost four years of sobriety prior to appellant's application for
regular licensure. The record also reflects active involvement in structured treatment programs--
both AA and attorney support group meetings. Appellant's mandatory evaluation from a substance
abuse treatment facility (5) includes statements from the evaluator that appellant's addiction severity
index rating was a "1" which indicated, according to the evaluator, "no problem, no treatment
necessary," (6) and was the lowest score available on the rating scale. 

 The Board cites this Court's decision in Allen for the proposition that the Board
must look at the evidence in each individual situation to determine chemical dependency. Allen,
908 S.W.2d at 322. The Board contends that a case-by-case analysis coupled with the broad
discretion given the Board in evaluating applicants creates the context whereby appellant may be
found presently chemically dependent. See id. In Allen, this Court reversed the district court and
affirmed an order of the Board finding that Allen was presently chemically dependent. Id. at 323. 
Although Allen had a history of alcoholism and alcohol-related arrests and problems, he had been
sober seventeen months prior to his licensing hearing before the Board. Id. Nevertheless, the
Board found him presently chemically dependent and issued him only a probationary license. Id.
at 320. In reviewing the Board's order, the district court remanded the matter to the Board and
ordered the Board to recommend a regular license for Allen. Id. This Court reversed the district
court, refusing to set the precedent that seventeen months was an adequate period of sobriety under
any circumstance to eliminate the possibility that an applicant remained chemically dependent. 
Id. at 323. We find it noteworthy, however, that our opinion in Allen reflects that Allen was not
involved in a regular structured program designed to combat his tendency toward alcoholism.

 The holding in Allen supported the Board's discretion in determining present
chemical dependency. The Board's discretion, however, is not limitless. In comparing Allen with
the instant case, several distinctions arise. The first, and most obvious, is the length of sobriety
prior to the licensing hearing; approximately forty-five months in the instant case compared to
seventeen months in Allen. However, just as important, in Allen the applicant was not involved
in any type of structured treatment program, while here, appellant attended multiple AA meetings
every week, attended attorney support group meetings regularly, and worked under the direct
supervision of an attorney monitor. 

 Appellant contends that substantial evidence does not exist in the record to support
the Board's finding of present chemical dependency. We agree. The Board points to two areas
in the administrative record to justify its finding that appellant was presently chemically
dependent: (1) that he has been active in AA since 1986; and (2) that the chemical dependency
evaluation noted a past chemical dependency problem and present medically supervised treatment
for anxiety. (7) This Court is troubled by the Board's interpretation of the term "present chemical
dependency." We find it hard to imagine how anyone could overcome the stigma of chemical
dependency under the Board's concept of present chemical dependency. Many experts would view
appellant's involvement in AA as evidence that appellant has worked to overcome chemical
dependency rather than evidence of a continuing problem. Furthermore, the Board places
appellant in an impossible catch-22 situation: the Board lists involvement in AA as a condition
of appellant's probationary license and yet attempts to use appellant's compliance with that
condition as evidence of a present chemical dependency. The Board's own rules state that a past
condition can only be relevant in a fitness determination to the extent it indicates a present lack
of fitness. See Tex. R. Governing Bar Admission 4(c). Yet, the Board attempts to list the mere
existence of past chemical dependency as substantial evidence of a present problem. 

 The only evidence the Board can muster of present chemical dependency is an
assertion in the chemical dependency evaluation that appellant suffers from anxiety, which can be
a contributing factor in chemical dependency. However, the mere existence of anxiety hardly
proves a present chemical dependency. We find that the length of appellant's sobriety prior to his
1996 hearing, his continued involvement in AA and other structured treatment efforts, and the "no
problem, no treatment necessary" comment from his chemical dependency evaluation far outweigh
any evidence of present chemical dependency demonstrated by appellant's present anxiety level. 
This record fails to reflect substantial evidence establishing that appellant is presently chemically
dependent. We sustain appellant's point of error.

The Board's Redetermination of Moral Character

 The Board must make a redetermination of an applicant's moral character and
fitness at the expiration of an applicant's probationary license before making a recommendation
to the supreme court regarding regular licensure. Tex. Gov't Code Ann. § 82.038(f) (West 1998). 
The Board made moral character and fitness an explicit condition of appellant's 1993 license in
requiring that appellant "not engage in any other conduct that evidences a lack of good moral
character and fitness." In the 1996 hearing, the Board found that two specific acts of appellant
evidenced a lack of good moral character; namely that appellant failed to adequately repay his
student loans and that a series of business cards and stationery he used in Arkansas violated the
Texas Disciplinary Rules of Professional Conduct regarding advertising. See Tex. Disciplinary
R. Prof. Conduct 7.04 (State Bar Rules art. X, § 9). 

 At the time of the 1996 hearing, appellant owed approximately $42,000 in
guaranteed student loans. Appellant acknowledged that three of his four loans were in default at
the time of the hearing. Appellant testified to recent attempts to consolidate or make other
arrangements to remove the loans from default, but acknowledged payment of only approximately
$700 towards these debts over the two-year period following the issuance of his 1993 probationary
license. The Board cites this failure to make regular payments as evidence that appellant willfully
chose not to fulfill his legal obligations, and thus lacked good moral character. Appellant cites
financial inability to pay as the reason behind his default status. 


 The Board additionally points to appellant's difficulties with the Arkansas Bar
regarding his business cards as further evidence of appellant's lack of good moral character. 
Appellant attempted to develop a practice in federal immigration law in both Texas and Arkansas
during the period of his 1993 probationary license. Appellant did not need an Arkansas state law
license to practice federal law in an Arkansas federal court. See Fed. R. App. P. 46; see also
Zamprano v. City of Tustin, 885 F.2d 1473, 1483 (9th Cir. 1989). The Texas Disciplinary Rules
of Professional Conduct, however, require disclosure of the jurisdictional limits of an attorney not
licensed to practice in the jurisdiction where an office is located. Tex. Disciplinary R. Prof.
Conduct 7.04. The record reflects several attempts by appellant to cure any alleged violations of
Texas and Arkansas disclosure requirements through alterations in the disclosures made on his
business cards. Appellant argues that the record is devoid of any evidence of appellant's intent
to mislead, and that his attempted remediation cuts against any such conclusion. The Board argues
that the Texas Disciplinary Rules of Professional Conduct do not require a showing of intent to
prove a violation of the advertising guidelines, and that appellant should be held strictly liable.

 We will decide this case on other grounds, and thus need not make a determination
whether the Board's finding of a lack of moral character due to these alleged infractions is
supported by substantial evidence. We will, however, take this opportunity to highlight some
problems in the redetermination procedure as practiced by the Board and brought to light by
appellant's contentions.

 The Texas Supreme Court has recognized the difficulty inherent in assessing "good
moral character" to practice law. Stevens, 868 S.W.2d at 776. The United States Supreme Court
has warned, and the Texas Supreme Court has adopted its language, that good moral character is
a "vague qualification, which is easily adapted to fit personal views and predilections, and can be
a dangerous instrument for arbitrary and discriminatory denial of the right to practice law." 
Konigsberg v. State Bar of Cal., 353 U.S. 252, 263 (1957); Stevens, 868 S.W.2d at 776. Possibly
in anticipation of this potential for arbitrary and discriminatory findings of moral character by the
Board, the statute conferring authorization upon the Board to conduct investigations also attempts
to circumscribe this power of the Board to make such determinations: 


The Board may not recommend denial of a license and the supreme court may not
deny a license to an applicant because of a deficiency in the applicant's moral
character or fitness unless . . . the Board finds a clear and rational connection
between a character trait of the applicant and the likelihood that the applicant would
injure a client or obstruct the administration of justice if the applicant were to
practice law. . . .



Tex. Gov't Code Ann. § 82.028(c) (West 1998); see also Stevens, 868 S.W.2d at 776.

 The Board has the authority to make determinations of an applicant's moral
character and fitness on three occasions: (1) when an applicant files a Declaration of Intent to
Study Law; (2) when an applicant files an application requesting to take the Texas Bar
Examination; and (3) when a chemically dependent, probationary licensee applies for a regular
license or another probationary license. See Tex. Gov't Code Ann. § 82.030(a), .038(f) (West
1998). Furthermore, when making a redetermination of a probationary licensee's moral character
and fitness, the Board has the obligation to examine the applicant's conduct over the previous
probationary period because the State Bar's jurisdiction over attorneys begins only after a regular
license to practice law in Texas has been issued. See Tex. R. Governing Bar Admission p. iii. 
We are troubled, however, when the Board, as in the instant case, takes the position that an
applicant's alleged violation of the Texas Disciplinary Rules of Professional Conduct equates
automatically with a lack of good moral character and fitness. In such a circumstance, the Board
is placed in the posture of not only having to supervise probation, but also to act as a de facto
grievance committee for probationary licensees. The Board, however, fails to provide the
procedural protections and range of sanctions given regular licensees in the grievance process.

 In making a redetermination of a probationary applicant's moral character, the
Board sits as prosecutor, judge, and jury. In appellant's case, the Board, or one of its
representatives, created the conditions under which appellant could practice law, prosecuted him
for the alleged violation of one or more of those conditions, determined that he violated the terms
of those conditions, and essentially meted out punishment in the form of its recommendation of
denial of regular licensure. This process perpetuates itself through the Board's revocation of
previous probationary licenses and issuance of new probationary licenses subject to more onerous
conditions.

 When a complaint is filed against a regularly licensed attorney under the jurisdiction
of the State Bar of Texas, that complaint is referred to a panel of the appropriate district grievance
committee for a determination of "just cause." Tex. R. Disciplinary P. 2.11. Committee
members must consist of one public member for every two attorneys, and must be chosen
randomly by the chair of the committee. Tex. R. Disciplinary P. 2.02, .07. Committee members
on the panel may be disqualified under the same rules which apply to district judges. Tex. R.
Disciplinary P. 2.06. Each side may present evidence. Tex. R. Disciplinary P. 2.11. If all on
the panel fail to find just cause, the complaint is dismissed; if at least one panel member, but less
than a majority, vote for just cause, the complainant can opt for a de novo review by a second
panel. Tex. R. Disciplinary P. 2.12. Should a majority of the second panel also fail to find just
cause, the complaint is dismissed. Id. Should a majority of the panel find just cause, the panel
can negotiate any sanction with the respondent short of disbarment, including private reprimand,
public reprimand, probated suspension, or suspension. Tex. R. Disciplinary P. 2.13. Should the
respondent fail to consent to a negotiated sanction, the process moves to either an evidentiary
hearing of the grievance committee or to a de novo review by a district court, at the election of
the respondent. Tex. R. Disciplinary P. 2.14.

 In comparing the two procedures, several notable distinctions arise. Unlike the
grievance process reviewing regularly licensed attorneys, the Board has no public members on its
panel. Furthermore, the range of sanctions available under the State Bar's grievance process
varies widely. The single sanction available to the Board for a transgression by a probationary
licensee, no matter how trivial, is denial of a regular license; the equivalent of disbarment. Thus,
whereas appellant's alleged violations of the advertising restrictions might yield a private or public
reprimand under the State Bar's grievance procedure, appellant received the death penalty by the
Board. Finally, and perhaps most significantly, the grievance process, at the election of the
respondent, provides for de novo review by a district court of the agency's determination. In the
instant case, the Board must meet only the minimum standard of substantial evidence to support
its determination. A reviewing court may not substitute its judgment for the Board's, and the
Board's decision must be upheld even where the supporting evidence is less than a preponderance. 
See Sizemore, 759 S.W.2d at 116; see also Charter Medical, 665 S.W.2d at 453.

 It can be argued that attorneys under the jurisdiction of the State Bar deserve greater
protection because their regular licenses represent vested rights to practice their profession. The
argument continues that probationary licensees possess only limited rights, and have a continuing
need for Board supervision. This position has merit and needs to be examined by those entities
charged with oversight of the process. We seek merely to highlight the problems presented by
appellant's situation and note that they are difficult of solution. Today, we need not attempt to
resolve the problems presented, as the Board's order may be affirmed solely on the grounds that
appellant admittedly violated some of the conditions of his 1993 license.


Attendance and Documentation Conditions of 1993 License

 Conditions three and four of appellant's 1993 license required appellant to attend
five AA meetings per week, to attend attorney support group meetings once per week, and to
document his attendance by providing his attorney monitor with weekly attendance logs. Although
appellant testified at the hearing that he attended these meetings regularly, it is undisputed that
appellant failed to document his attendance on a regular basis. Furthermore, although appellant's
attorney monitor stated that he would have granted appellant an exception for weekly attendance
at attorney support group meetings due to the time appellant spent in Arkansas, appellant failed
to request this of him.

 It bears repeating that, under substantial evidence review, this Court may not
substitute its judgment for that of the agency, and must uphold the agency decision if the evidence
in the record can possibly support that decision. See Charter Medical, 665 S.W.2d at 453; see
also Auto Convoy, 507 S.W.2d at 722. Unfortunately for appellant, the record clearly shows non-compliance with some of the conditions of his 1993 license. While there could be substantial
debate as to the overall significance of the conditions violated by appellant, the authority under
which the Board placed those conditions on appellant's 1993 license is not at issue in this appeal. (8) 
We have expressed concern in the past whether certain conditions placed by the Board on
probationary licenses comply with Texas Government Code § 82.038 or with Rule 16(c) of the
Rules Governing Admission to the Bar of Texas. See Allen, 908 S.W.2d at 322-323. We continue
to maintain this concern. (9) However, appellant never challenged the conditions of his 1993
probationary license, and we cannot revisit them on this appeal. Therefore, appellant's admitted
violations of some of the 1993 conditions alone must constitute sufficient grounds for the Board's
order revoking appellant's 1993 license. The Board has express authority to terminate a
probationary license upon a finding that a condition of probation imposed by the Board has been
violated. See Tex. Gov't Code Ann. § 82.038(h) (West 1998); see also Tex. R. Governing Bar
Admission 16(g)(2)(B). The language of the statute and that of the rule authorizing revocation was
incorporated into the 1993 license itself: "that Applicant's probationary license may be revoked
at any time upon recommendation of the Board, if, after a hearing, it is determined that he has
violated a condition of such license." The 1993 license further mirrored statutory language in
stating: 


the Board shall not recommend to the Supreme Court that Applicant be granted a
regular license to practice law until the Board redetermines his moral character and
fitness at that time. A positive redetermination must include a finding that
Applicant has been free from chemical dependency for the preceding two years,
and has met all of the other conditions of his probationary license. 



(Emphasis added); see Tex. Gov't Code Ann. § 82.038(f) (West 1998).

 Appellant's situation under a probationary license resembles criminal probation in
that the Board has discretion to refuse to recommend appellant for regular licensure and to revoke
his probationary license upon a finding that any condition, no matter how inconsequential, has
been violated. Because appellant clearly violated the requirements that he document on a weekly
basis his attendance at AA meetings and attorney support group meetings, substantial evidence
exists in the record to support the Board's finding that appellant violated the terms of his 1993
license. Thus, the Board had the authority to refuse appellant his regular license, and to revoke
his 1993 probationary license. Accordingly, we overrule appellant's remaining points of error.


CONCLUSION

 Because substantial evidence exists in the record supporting the Board's actions,
we affirm the order of the trial court.



 

 Mack Kidd, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: November 13, 1998

Publish
1. The 1993 order of the Board included the following conditions:


1. that Applicant shall remain abstinent from all alcohol and other mind altering
drugs. . .;

2. that Applicant shall comply with any requirements of the Lawyers' Assistance
Program to which the Board shall refer him and shall be subject to the supervision
of an attorney monitor acceptable to the Board. . .;

3. that Applicant shall work to maintain his sobriety with an Alcoholics Anonymous
sponsor, and, unless exceptions are approved by his attorney monitor, attend and
actively participate in at least five AA meetings per week, and document such
attendance with an attendance log that he will provide on a weekly basis to his
attorney monitor;

4. that Applicant shall attend attorney support group meetings one time per
week . . . and document. Exceptions must be approved by his attorney monitor;

5. that Applicant shall attend AA meetings as required and continue to make a bona
fide effort to work actively all of the steps of the AA program under the supervision
of his AA sponsor;

6. that Applicant shall be subject to random alcohol/drug screens at the frequency
determined by his monitor. . .;

7. that Applicant shall not engage in any other conduct that evidences a lack of
good moral character or fitness;

8. that Applicant shall file a written report every six months on a questionnaire to
be furnished by the Board that addresses his faithfulness in meeting the conditions
established herein and other matters relating to his moral character and fitness;

9. that Applicant shall reside continuously in Texas during the period of his
probationary license, unless good cause shown, the Board waives this requirement;

10. that Applicant shall undergo an evaluation from a substance abuse treatment
facility. . .within a period that is between 60 and 30 days prior to the expiration of
his probationary license;

11. that Applicant's probationary license may be revoked at any time upon
recommendation of the Board if, after a hearing, it is determined that he has violated
a condition of such license;

12. that between 60 and 30 days prior to the expiration of his probationary license,
Applicant shall apply for a renewal of his probationary license, or for a regular
license to practice law, which application shall include evidence satisfactory to the
Board that the conditions of his probationary license have been met; that the Board
shall not recommend to the Supreme Court that Applicant be granted a regular
license to practice law until the Board redetermines his moral character and fitness
at that time. A positive redetermination must include a finding that Applicant has
successfully completed treatment, has been free from chemical dependency for the
preceding two years, and has met all of the other conditions of his probationary
license; and 

13. that Applicant shall inform the Board of any change in his address and telephone
number, by certified mail, return receipt requested, within 10 days of any such
change.
2. The 1996 license included the conditions previously listed on the 1993 license as well as the
following additional conditions (numbered as occurring on the license):


1. Applicant shall commit no offense against the laws of this state, any other state,
or the United States;

2. Applicant shall work faithfully at suitable employment as far as possible;

3. Applicant shall conduct himself in such a way so as to avoid, and not be subject
to disciplinary action for, the breach of any regulation, rule, or statute governing any
profession in which he may be engaged;

5. Applicant shall make a good faith effort to reduce his student loan debts during
the term of his probationary license and to keep all other debts in a current status;

6. Applicant shall provide the Board, by May 1, 1996, with an income and expense
statement and a detailed plan for making both regular payments on his student loan
debts, liquidating any other past due debts, and keeping all other debts in a current
status.


Furthermore, the 1996 license stated that "revocation based on Applicant's failure to abide by the
conditions of this order shall conclusively establish on his part a lack of trustworthiness in carrying
out responsibilities, making it likely that he would injure a client, obstruct the administration of
justice, or violate the disciplinary rules of professional conduct."
3. The statute states that conditions of a probationary license may include, but are not limited
to, one or more of the following:


(1) prohibiting the person from using alcohol or controlled substances;

(2) treatment for chemical dependency;

(3) supervision of the person's work by a licensed attorney;

(4) submission to periodic drug testing;

(5) periodic reporting by the person to the board; or

(6) suspension, for a portion of the probationary period, of an activity for which a
license to practice law is required.


Tex. Gov't Code Ann. § 82.038(e) (West 1998).
4. Chemical dependency is defined by statute and by Board rule as "(A) the abuse of alcohol
or a controlled substance; (B) a pathological use of alcohol or a controlled substance that
chronically impairs the applicant's ability to competently provide legal advice or services; or (C)
a physiological or physical dependence on alcohol or a controlled substance." Tex. Gov't Code
Ann. § 82.038(i) (West 1998); Tex. R. Governing Bar Admission 1(a)(5).
5. The terms of appellant's 1993 probationary license required him to undergo an evaluation
from a substance abuse treatment facility before application for a regular license, or for renewal
of his probationary license.
6. The chemical dependency evaluation also included findings that appellant's pattern between
1986 and 1993 had been to maintain sobriety for approximately a year and a half followed by
hospitalized detoxification or treatment. However, at the time of the evaluation, appellant's last
reported treatment for alcohol dependency was in 1992, almost four years prior to the 1996
hearing.
7. The Board's appellate brief attempts to justify the finding of present chemical dependency
with the following statements: "Unglaub is presently chemically dependent. Unglaub has been
active in AA since 1986. He testified that, absent his continued participation in AA, he would not
be before the Board seeking to continue his practice of law. These facts alone support a finding
of chemical dependence. . . . The Chemical Dependency Evaluation is evidence of chemical
dependency presently under control due to social intervention and treatment. It is not evidence
of no chemical dependency." 


 The Board's findings of fact and conclusions of law are even more vague and indefinite. 
The Board states: "Applicant suffers from chemical dependency as defined by Rule I(a)(5) of the
Texas Government Code as evidenced by, among other things, his testimony and treatment
history, although he has made progress in addressing his dependency."
8. Appellant urges this Court to examine the authority under which the Board placed additional
and more onerous conditions on appellant's 1996 probationary license. We need not address this
point, however, because the Texas Supreme Court has acted to revoke appellant's 1996
probationary license. On September 19, 1997 the Board held a hearing, not attended by appellant,
which recommended revocation of appellant's 1996 probationary license. The supreme court so
ordered, and appellant failed to appeal.
9. This Court finds especially troubling the inclusion of "catch-all" conditions on appellant's
1993 and 1996 probationary licenses. Examples include "that applicant shall not engage in any
other conduct that evidences a lack of good moral character or fitness;" and "that applicant shall
commit no offense against the laws of this state, any other state, or the United States."



 plan for making both regular payments on his student loan
debts, liquidating any other past due debts, and keeping all other debts in a current
status.


Furthermore, the 1996 license stated that "revocation based on Applicant's failure to abide by the
conditions of this order shall conclusively establish on his part a lack of trustworthiness in carrying
out responsibilities, making it likely that he would injure a client, obstruct the administration of
justice, or violate the disciplinary rules of professional conduct."
3. The statute states that conditions of a probationary license may include, but are not limited
to, one or more of the following:


(1) prohibiting the person from using alcohol or controlled substances;

(2) treatment for chemical dependency;

(3) supervision of the person's work by a licensed attorney;

(4) submission to periodic drug testing;

(5) periodic reporting by the person to the board; or

(6) suspension, for a portion of the probationary period, of an activity for which a
license to practice law is required.


Tex. Gov't Code Ann. § 82.038(e) (West 1998).
4. Chemical dependency is defined by statute and by Board rule as "(A) the abuse of alcohol
or a controlled substance; (B) a pathological use of alcohol or a controlled substance that
chronically impairs the applicant's ability to competently provide legal advice or services; or (C)
a physiological or physical dependence on alcohol or a controlled substance." Tex. Gov't Code
Ann. § 82.038(i) (West 1998); Tex. R. Governing Bar Admission 1(a)(5).
5. The terms of appellant's 1993 probationary license required him to undergo an evaluation
from a substance abuse treatment facility before application for a regular license, or for renewal
of his probationary license.
6. The chemical dependency evaluation also included findings that appellant's pattern between
1986 and 1993 had been to maintain sobriety for approximately a year and a half followed by
hospitalized detoxification or treatment. However, at the time of the evaluation, appellant's last
reported treatment for alcohol dependency was in 1992, almost four years prior to the 1996
hearing.
7. The Board's appellate brief attempts to justify the finding of present chemical dependency
with the following statements: "Unglaub is presently chemically dependent. Unglaub has been
active in AA since 1986. He testified that, absent his continued participation in AA, he would not
be before the Board seeking to continue his practice of law. These facts alone support a finding
of chemical dependence. . . . The Chemical Dependency Evaluation is evidence of chemical
dependency presently under control due to social intervention and treatment. It is not evidence
of no chemical dependency." 


 The Board's findings of fact and conclusions of law are even more vague and indefinite. 
The Board states: "Applicant suffers from chemical dependency as defined by Rule I(a)(5) of the
Texas Government Code as evidenced by, among other things, his testimony and treatment
history, although he has made progress in addressing his dependency."
8. Appellant urges this Court to examine the authority under which the Board placed additional
and more onerous conditions on appellant's 1996 probationary license. We need not address