TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00798-CV







Board of Law Examiners of the State of Texas, Appellant




v.




Douglas M. Coulson, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. GN00649, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 The Board of Law Examiners of the State of Texas (the "Board") appeals the trial
court's reversal of a Board order that recommended the issuance of a probationary law license to
Douglas M. Coulson. The Board concluded that Coulson had a possible chemical dependency and
denied Coulson a regular law license based on the connection between the possible chemical
dependency and the likelihood that Coulson might fail to properly discharge his duties as a lawyer. 
The trial court reversed the order on the following two grounds: (1) the Board is required to find that
the applicant suffers from a present chemical dependency; and (2) the Board's conclusions were not
supported by substantial evidence. We will affirm the judgment of the trial court on both grounds.


FACTUAL AND PROCEDURAL BACKGROUND


 In January 1999, Coulson applied for admission to the Bar of Texas. Coulson, as
required, disclosed to the Board his past history of alcohol and drug abuse. See Tex. R. Governing
Bar Admission 6. Coulson revealed that in late 1988 through early 1989, at age 19, he underwent
treatment for alcohol and substance abuse. Coulson also disclosed that before treatment he had been
arrested for disorderly conduct and public intoxication on two separate occasions in 1987 and 1988. 

 The Board made a preliminary determination that, ten years after treatment, Coulson
may suffer from chemical dependency. The Board then requested Coulson to be evaluated pursuant
to Rule 10(b)(1) of the Rules Governing Admission to the Bar of Texas (the "Board Rules"). See
id. 10(b)(1). Coulson met with Karen McKibben, a Board evaluator and a licensed social worker. 
McKibben concluded in her evaluation report to the Board that Coulson did not suffer from a present
chemical dependency. She expressed concerns about Coulson drinking minor amounts of alcohol
given his past addictions but stated that she would not consider Coulson unable to competently
provide legal services or advice. McKibben, however, did recommend that Coulson abstain from
all mood altering chemicals, including alcohol, attend weekly Alcoholics Anonymous meetings for
several months, and go to counseling.

 The Board then held a hearing to determine whether Coulson was suffering from
chemical dependency. At the hearing, Coulson testified and McKibben's report was presented as
evidence. Coulson also presented an evaluation report conducted by Dr. Carole Ann Busick, a
licensed psychologist and certified Master Addiction Counselor. Dr. Busick concluded in her report
that Coulson did not suffer from a present chemical dependency, despite his past history of substance
abuse.

 Coulson testified that he had turned his life around after he went through treatment. 
Coulson testified that since 1990 he has not used any illegal drugs and has only consumed minor
amounts of alcohol a few times per year. Coulson has earned a bachelor's and a master's degree,
and graduated in the top third of his class at Tulane Law School. Coulson married in his first year
of law school, and his wife testified that she only saw Coulson drink lightly and that she never saw
him intoxicated.

 Coulson's father testified to his son's reform. His father testified that in the last ten
years he only saw Coulson drink one glass of champagne, which was at his wedding. Coulson's
employer also testified in an affidavit that Coulson did not exhibit any signs of chemical dependency. 
Matthew Sheynes, a friend and a classmate at Tulane Law School, testified in an affidavit that
Coulson was a serious student who was devoted to his wife. Sheynes also testified that he never saw
Coulson drink.

 After the hearing, the Board issued its order containing two conclusions of law:


1. There is a clear and rational connection between Applicant's possible chemical
dependency, . . . and the likelihood that he might fail to discharge properly his
duties to a client, a court, or the legal profession if he were recommended for a
regular license to practice law at this time. 


2. Applicant's present good moral character and fitness should be conditionally
approved and, for the protection of the public, he should be recommended for a
probationary license to expire two years after the date it is issued.



(Emphasis added.) The probationary license was also subject to Coulson's compliance with twenty
conditions, including working faithfully at suitable employment, not committing any offense against
the laws of Texas or any other state or the United States, and not engaging in any conduct that
evidences a lack of good moral character. (1)

 Coulson appealed the Board's order to the trial court. The trial court found that
section 82.038 of the Texas Government Code required the Board to find that the applicant presently
suffers from chemical dependency before imposing a probationary license. See Tex. Gov't Code
Ann. § 82.038 (West 1998). The trial court also found that the Board's first conclusion of law was
not supported by substantial evidence. The trial court, therefore, reversed the Board's order for a
probationary license and ordered that the Board recommend Coulson for a regular license. The
Board then perfected this appeal.


STANDARD OF REVIEW


 The central issue on appeal is whether the Board's finding of a possible chemical
dependency is legally sufficient to support the Board's denial of a regular law license. The relevant
provisions include sections 82.028 and 82.038 of the Texas Government Code and Board Rule
16(a)(1). Id. §§ 82.028, .038; Tex. R. Governing Bar Admission 16(a)(1). The cardinal rule of
statutory construction is to ascertain and follow the legislature's intent. Citizens Bank v. First State
Bank, Hearne, 580 S.W.2d 344, 348 (Tex. 1979); Minton v. Frank, 545 S.W.2d 442, 445 (Tex.
1976). We ascertain that intent by looking initially at the language used in the statute. Jones v. Del
Andersen & Assocs., 539 S.W.2d 348, 350 (Tex. 1976); Railroad Comm'n v. Miller, 434 S.W.2d
670, 672 (Tex. 1968). The words in the statute should be interpreted according to their ordinary
meaning; they are not to be interpreted in an exaggerated, forced, or strained manner. Howell v.
Mauzy, 899 S.W.2d 690, 704 (Tex. App.--Austin 1994, writ denied).

 The Board also appeals the trial court's finding that the Board's order was not
supported by substantial evidence. When the Board makes a negative character and fitness
determination, an applicant is entitled to judicial review of the Board's decision. See Tex. R.
Governing Bar Admission 15(i); see also Unglaub v. Board of Law Exam'rs, 979 S.W.2d 842, 845
(Tex. App.--Austin 1998, pet denied.); Board of Law Exam'rs v. Allen, 908 S.W.2d 319, 321 (Tex.
App.--Austin 1995, no writ). The reviewing court may affirm or remand the matter to the Board,
depending on whether the decision is "reasonably supported by substantial evidence." Tex. R.
Governing Bar Admission 15(i)(5).

 In conducting a substantial evidence review, we must first determine whether the
evidence as a whole is such that reasonable minds could have reached the conclusion the agency
must have reached in order to take the disputed action. Unglaub, 979 S.W.2d at 845 (citing Texas
State Bd. of Dental Exam'rs v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988)). We may not substitute
our judgment for that of the agency and may consider only the record on which the agency based its
decision. Id. Although substantial evidence is more than a mere scintilla, the evidence may actually
preponderate against the decision of the agency and nonetheless amount to substantial evidence. 
Allen, 908 S.W.2d at 321 (citing City of El Paso v. Public Util. Comm'n, 883 S.W.2d 179, 185 (Tex.
1994)).


DISCUSSION

 The Texas Supreme Court maintains the exclusive authority to issue licenses to
applicants seeking admission into the Texas Bar. Tex. Gov't Code Ann. § 82.021 (West 1998). The
Board, however, acting pursuant to the authority of the supreme court, supervises bar admissions and
thereby plays a key role in maintaining the integrity and character of the Texas Bar. Unglaub, 979
S.W.2d at 845 (citing Board of Law Exam'rs v. Stevens, 868 S.W.2d 773, 776 (Tex. 1994)). The
supreme court vests the Board with considerable discretion in evaluating applicants based upon the
promulgated admission standards. Id. Bar admission affirmatively requires "good moral character"
and "fitness" to practice law. Tex. R. Governing Bar Admission 4(a). It is the Board's duty to
evaluate each applicant's present moral character and fitness before making a recommendation to
the supreme court regarding licensing. See Tex. Gov't Code Ann. § 82.004 (West 1998).


Present Chemical Dependency


 The Board may recommend a regular law license if it finds good moral character and
fitness. "The fitness required is a present fitness, and prior mental or emotional illnesses or
conditions are relevant only so far as they indicate the existence of a present lack of fitness." Tex.
R. Governing Bar Admission 4(c); see also Unglaub, 979 S.W.2d at 846. In making a fitness
determination, the Board seeks to exclude from the practice of law any person having a mental or
emotional illness or condition that would likely prevent the person from carrying out duties to
clients, courts, or the profession. Tex. R. Governing Bar Admission 4(c). The Board, therefore, may
deny a regular license and recommend instead a probationary license for those applicants suffering
from present chemical dependency. Id. 16(a)(1); Tex. Gov't Code Ann. §§ 82.028(c), .038
(emphasis added). Chemical dependency is defined by the statute and by the Board Rule as "(A) the
abuse of alcohol or a controlled substance; (B) the pathological use of alcohol or a controlled
substance that chronically impairs the applicant's ability to competently provide legal advice or
services; or (C) a physiological or physical dependence on alcohol or a controlled substance." Tex.
R. Governing Bar Admission 1(a)(5); Tex. Gov't Code Ann. § 82.038(i). A probationary license can
be issued in lieu of a regular license only if a present chemical dependency is found. Unglaub, 979
S.W.2d at 846 (holding that the Board must establish a present chemical dependency to justify
finding a continuing lack of fitness where past addictions are at issue).

 The Board's first conclusion of law in its order rests solely on the finding of a
possible chemical dependency creating a likelihood that Coulson might fail in discharging his duties
as an attorney. The Board concedes that it did not find that Coulson suffers from a present chemical
dependency. The Board's conclusion does not mention any other factor that could have influenced
its decision to deny a regular license and instead recommend a probationary license. Because its
conclusion deals solely with chemical dependency, the Board's findings and order fall squarely under
Board Rule 16(a)(1), which states that the Board has the authority to issue a probationary license
"when the Board determines that the Applicant suffers from chemical dependency. . . ." Tex. R.
Governing Bar Admission 16(a)(1) (emphasis added). The rule requires a present chemical
dependency, not a possible dependency. Because the Board rested its conclusions of law on a
possible dependency, the Board's order also fails to apply the appropriate statutory standards set
forth for issuing probationary licenses under sections 82.028 and 82.038. Tex. Gov't Code Ann.
§§ 82. 028(c), .038.

 Section 82.028, which governs assessment of fitness and denial of licenses, requires
a finding of a present mental or emotional condition--in this case present chemical
dependency--before the Board can deny a regular license. Id. § 82.028(c). According to this
provision, the Board may not recommend a denial of a regular law license because of a deficiency
in moral character or fitness unless "the board finds a clear and rational connection between the
applicant's present mental or emotional condition and the likelihood that the applicant will not
discharge properly the applicant's responsibilities to a client, a court, or the legal profession . . . ." 
Id. (emphasis added).

 The Board erred in its application of the standards set forth in section 82.028(c) in
two ways. See id. First, the Board found only a possible chemical dependency where the statute
requires a present condition. Second, the Board concluded that the possible dependency is linked
with the likelihood that Coulson might not properly discharge his duties as a lawyer. The statute,
however, requires the Board to link the dependency with the likelihood that the Applicant will not
properly discharge his or her duties.

 Section 82.038, which governs the Board's recommendation of probationary licenses
for applicants suffering from chemical dependency, further emphasizes the requirement for finding
a present chemical dependency. Id. § 82.038(a). This section of the Government Code states, "[i]f,
after a moral character and fitness assessment, the Board of Law Examiners determines that the
applicant suffers from chemical dependency, the board shall notify the applicant of its determination
and the applicant's rights under this section." Id. (emphasis added). The statute does not address
a possible chemical dependency; instead, the provision contemplates the Board finding a present
dependency. The Board's first conclusion, therefore, fails to use the appropriate standard set forth
in section 82.038 for finding a chemical dependency and recommending a probationary license on
this basis. In addition, the Board failed to take into consideration this Court's opinion in Unglaub,
which explicitly stated that the Board must establish present chemical dependency. Unglaub, 979
S.W.2d at 847. Therefore, we overrule the Board's first issue on appeal.


Substantial Evidence


 Even if the Board had used the proper statutory standard set forth for finding a present
chemical dependency, the Board's first conclusion of law is not supported by substantial evidence. 
The Board presented no evidence of a present chemical dependency. Coulson testified that he had
undergone treatment for his abuse of drugs and alcohol as a young man. Past treatment for substance
abuse cannot be considered evidence of a present chemical dependency. Id. In Unglaub, we
expressed our disapproval of the Board's use of evidence that an applicant had been active in
Alcoholics Anonymous to support its finding of present chemical dependency. Id. This Court
stated, "[w]e find it hard to imagine how anyone could overcome the stigma of chemical dependency
under the Board's concept of present chemical dependency." Id.

 The evidence revealed a pattern of Coulson's post-treatment conduct far removed
from his earlier years of substance abuse. Coulson and his father testified that for ten years Coulson
had not abused drugs and had only consumed minimal amounts of alcohol during that period. The
Board's own evaluator, McKibben, indicated in her report that Coulson was not presently suffering
from any chemical dependency. She expressed concerns about his continuing use of even small
amounts of alcohol given his past problems and made several recommendations. McKibben
ultimately concluded that Coulson would not be incompetent as a lawyer and would be able to
competently exercise his duties. Coulson also presented an independent evaluation by Dr. Busick,
who concluded that Coulson did not presently suffer from a chemical dependency.

 No other evidence, other than Coulson drinking small amounts of alcohol, was
presented which indicated that he has a present chemical dependency. In its order, the Board relied
upon the following evidence in making its decision: (1) Coulson's treatment for drug abuse in 1988
and 1989; (2) his two arrests for public intoxication in 1987 and 1988; (3) McKibben's concern
about Coulson's continued consumption of alcohol; and (4) her recommendations that Coulson
undergo counseling and attend Alcoholics Anonymous meetings. These facts do not support the
finding of a present chemical dependency.

 Further, the Board must show a clear and rational connection between chemical
dependency and the likelihood that an Applicant will fail to properly discharge his or her duties as
an attorney. The Board did not present any evidence establishing a connection between Coulson's
behavior and a likelihood that he might not discharge his duties as a lawyer. The Board's own
evaluator, McKibben, stated in her report that Coulson would be able to perform his duties as an
attorney. Coulson's post-treatment achievements, academic and personal, suggest as much. Given
the lack of substantial evidence, we overrule the Board's second issue on appeal.


CONCLUSION


 Because the Board based its first conclusion of law and ultimately its denial of a
regular law license on a possible chemical dependency, the Board failed to utilize the appropriate
legal standard set forth in the Texas Government Code, which requires a finding of a present
chemical dependency before a regular law license can be denied and a probationary license can be
recommended. The evidence does not support a finding of present chemical dependency. Finally,
the evidence does not demonstrate the likelihood that Coulson will fail to properly discharge his
duties as an attorney. Therefore, we affirm the trial court's reversal of the Board's order.



 

 David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: May 31, 2001

Publish

1. Although we do not find it necessary to address these conditions, we are troubled by the vague
nature of many of the conditions imposed by the Board's order. See Unglaub v. Board of Law
Exam'rs, 979 S.W.2d 842, 851 (Tex. App.--Austin 1998, pet denied.); Board of Law Exam'rs v.
Allen, 908 S.W.2d 319, 322-23 (Tex. App.--Austin 1995, no writ).


use cannot be considered evidence of a present chemical dependency. Id. In Unglaub, we
expressed our disapproval of the Board's use of evidence that an applicant had been active in
Alcoholics Anonymous to support its finding of present chemical dependency. Id. This Court
stated, "[w]e find it hard to imagine how anyone could overcome the stigma of chemical dependency
under the Board's concept of present chemical dependency." Id.

 The evidence revealed a pattern of Coulson's post-treatment conduct far removed
from his earlier years of substance abuse. Coulson and his father testified that for ten years Coulson
had not abused drugs and had only consumed minimal amounts of alcohol during that period. The
Board's own evaluator, McKibben, indicated in