TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00343-CV






Board of Law Examiners of the State of Texas, Appellant



v.



Kristine Arlitt, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 98-01582, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING







 Appellant, the Board of Law Examiners of the State of Texas (the "Board"), appeals
a trial court's reversal of a Board order that recommends denial of appellee Kristine Arlitt's
application for admission to the State Bar of Texas. In support of its order, the Board found that
Arlitt had failed to comply with the curative measures prescribed in a previous Board order and that
she possessed the negative character traits of dishonesty and lack of respect for the judicial process. 
Determining that specified findings of fact in the Board's order were not supported by substantial
evidence, the trial court reversed the order and remanded the cause to the Board. By two issues, the
Board appeals, arguing that (1) the order is supported by substantial evidence and (2) the trial court
erred by substituting its judgment for that of the Board on matters committed to the Board's
discretion. We will affirm the trial court's judgment.




BACKGROUND

 Arlitt passed the Bar examination, but has never been licensed to practice law. On
February 17, 1995, a hearings panel for the Board considered Arlitt's application for admission to
the practice of law. As a result of the hearing, the Board determined that Arlitt "lacked the good
moral character required for admission to the practice of law in Texas" (the "1995 Board Order"). 
Arlitt appealed the 1995 Board Order to the trial court. The court affirmed the 1995 Board Order
in part and reversed and remanded in part. On remand, the Board entered an amended order on May
6, 1997 (the "May 1997 Board Order"), in which it concluded that Arlitt possessed the negative
character traits of dishonesty and lack of respect for the judicial process, and once again found that
she lacked the good moral character required for admission to the Bar.

 In 1996, while the trial court was reviewing the 1995 Board Order, Arlitt filed an
application for redetermination with the Board to demonstrate her compliance with the curative
measures provided in the order. The Board held a hearing on the application for redetermination on
July 17, 1997. Following the hearing, the Board issued an order on October 3, 1997 (the "October
1997 Board Order"), including findings of fact and conclusions of law, and again refused to
recommend Arlitt for admission to the practice of law. The Board once more concluded that Arlitt
possessed the negative character traits of dishonesty and lack of respect for the judicial process and
further, that she failed to comply with the curative measures in the previous May 1997 Board Order. 
Among the bases for the Board's decision were its findings that (1) Arlitt had filed contradictory
statements under oath in two separate legal proceedings; (2) she had failed to disclose her
involvement in an adversary proceeding in bankruptcy court; (3) she had personally been sanctioned
twice, once for obtaining an ex parte refund of a temporary restraining order bond and once for
violating a bankruptcy rule; and (4) there was some indication that Arlitt may again be sanctioned
in an ongoing proceeding to which she is a party.

 Arlitt appealed the October 1997 Board Order to the trial court, and the court reversed
the Board's order and remanded the matter for further fact-finding inquiries. In its "final order and
judgment," the trial court concluded that several of the Board's findings of fact were not supported
by substantial evidence. Among those were the findings that Arlitt had filed contradictory statements
regarding her homestead in two separate legal proceedings, which the Board concluded indicated a
character trait of dishonesty, and that Arlitt failed to disclose her involvement in a bankruptcy
adversary proceeding. Although the court found substantial evidence supported the Board's findings
that Arlitt had been sanctioned for violating a bankruptcy rule and for obtaining an ex parte refund,
the court ruled that there was a lack of evidence explaining the factual basis for these sanctions; the
court, therefore, remanded these issues with instructions to reconsider the findings that the sanctions
indicated a lack of respect for the judicial process. Finally, the court concluded that the Board's
findings regarding possible imminent sanctions against Arlitt were mere speculation and remanded
those findings as well.


DISCUSSION

 By two issues presented, the Board argues that its order is supported by substantial
evidence and that the trial court erred by substituting its judgment for that of the Board on matters
committed to the Board's discretion.

 When the Board makes a negative character determination, (1) an applicant is entitled
to judicial review of the Board's decision. See Tex. R. Govern. Bar Adm'n XV(j); see also Unglaub
v. Bd. of Law Exam'rs, 979 S.W.2d 842, 845 (Tex. App.--Austin 1998, pet. denied); Bd. of Law
Exam'rs v. Allen, 908 S.W.2d 319, 321 (Tex. App.--Austin 1995, no writ). The reviewing court
may affirm or remand the matter to the Board depending on whether the decision is "reasonably
supported by substantial evidence." Tex. R. Govern. Bar Adm'n XV(j)(5).

 A substantial-evidence review requires the court to determine whether the evidence
as a whole is such that reasonable minds could have reached the conclusion the Board must have
reached in order to take the disputed action. Unglaub, 979 S.W.2d at 845 (citing Texas State Bd. of
Dental Exam'rs v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988), cert. denied, 490 U.S. 1080 (1989);
Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984)). 
A reviewing court may not substitute its judgment for that of the Board and may consider only the
record on which the Board based its decision. Id.; Allen, 908 S.W.2d at 321 (explaining that
although Administrative Procedure Act does not govern Board procedures, reference to substantial
evidence review under Act is beneficial). "Although substantial evidence is more than a mere
scintilla, the evidence may actually preponderate against the decision of the [Board] and nonetheless
amount to substantial evidence." City of El Paso v. Pub. Util. Comm'n, 883 S.W.2d 179, 185 (Tex.
1994).

 The evidence presented before the Board regarding Arlitt's allegedly conflicting
statements concerning her homestead consisted of an affidavit and a verified response filed in
bankruptcy court. The statements emerged during the pendency of a lengthy and convoluted
bankruptcy proceeding initiated by Arlitt's former husband, Elwood Cluck. (2) Arlitt and Cluck owned
two pieces of property--one, a 119.2-acre tract in Wilson County (the "Wilson tract"), and the other,
a residence in Bexar County (the "Bexar property"). In 1990, Cluck filed for bankruptcy, and in his
scheduling order, he claimed the Bexar property as Arlitt's and Cluck's homestead. In 1994, the IRS
seized the Bexar property, and the property was subsequently sold. In 1995, in an effort to avoid
dispossession of the Wilson tract by the bankruptcy trustee, Arlitt filed an affidavit in support of
application for temporary restraining order (the "1995 affidavit") with the bankruptcy court, claiming
the Wilson tract as her homestead. At this time, the Bexar property had already been seized, and
Arlitt no longer held title to that property, although she still resided on it. The bankruptcy court,
however, ruled that Arlitt could not claim the Wilson tract as her homestead because the scheduling
order had the Bexar property listed as her homestead. 

 In 1996, believing that she had been defrauded in the sale of the Bexar property, Arlitt
filed suit against Cluck and others, alleging fraud in the sale of the property. She also filed with the
bankruptcy court a response and objection to a motion to annul an automatic stay (the "1996
response") in an effort to prevent her removal from the Bexar property. In her response, Arlitt
claimed the Bexar property as her homestead. Arlitt claims to have relied on the 1995 bankruptcy
court order, which prohibited her from claiming the Wilson tract as her homestead, in preparing the
1996 response. It is this response that the Board relied on in determining that Arlitt had filed
inconsistent statements. According to the Board, Arlitt's 1996 response, claiming the Bexar property
as her homestead, could not be read consistently with her 1995 affidavit asserting the Wilson tract
as her homestead. The Board concluded that Arlitt's filing of inconsistent statements indicated the
character trait of dishonesty. The trial court disagreed, holding that the Board's finding that Arlitt
had filed contradictory and inconsistent sworn statements was not supported by substantial evidence. Our review of the record confirms the trial court's assessment. (3) It appears Arlitt was
asserting alternative homestead claims when filing the two documents at issue. Arlitt had an interest
in only two parcels of property. Once she no longer held title to the Bexar property, Arlitt claimed
the Wilson tract as her homestead. However, when the bankruptcy court informed her that she was
precluded from declaring the Wilson tract as her homestead, Arlitt relied on the bankruptcy court's
order and reverted to claiming the Bexar property as her homestead. After the bankruptcy court
disallowed her claim as to one property as her homestead, Arlitt was entitled to claim the other. 
Under the Board's interpretation of "conflicting statements," Arlitt would have had to forego any
homestead claim after the bankruptcy court ruled that the Wilson tract could not be her homestead,
because a homestead claim to any other property would be considered inconsistent with the 1995
affidavit. Such an interpretation is an unreasonable criterion by which to assess the moral character
of a prospective lawyer. 

 Moreover, there is no evidence indicating that Arlitt was attempting to mislead the
bankruptcy court regarding her living arrangements when filing the two documents. Indeed, in the
1995 affidavit in which Arlitt claimed the Wilson tract as her homestead, she stated, "In June, 1989,
[Arlitt] purchased a residence located at 417 East Mandalay Drive, San Antonio, Texas, in order to
avoid commuting and to provide convenient access to schools and educational facilities located in
San Antonio for her children." Thus, the bankruptcy court was aware that Arlitt owned the Bexar
property and was living there when she filed the 1995 affidavit. Both the 1995 affidavit and the
1996 response included in the administrative record filed with this Court are missing a number of
pages. (4) Hence, the extent of the information Arlitt provided to the bankruptcy court is uncertain
since the documents that were provided to the Board are incomplete. Yet, this is the only evidence
considered by the Board in support of its conclusion that Arlitt filed inconsistent statements and
therefore possessed the character trait of dishonesty. We hold these two incomplete documents,
asserting alternative homestead claims before the same bankruptcy court, do not constitute
substantial evidence to support the Board's findings.

 With regard to Arlitt's failure to disclose her involvement in an adversary
proceeding, (5) the Board found that Arlitt failed to supplement her response to the following question:
"Are you presently, or have you been within the period covered, a party to any civil suit or
proceeding . . . ?" Although Arlitt disclosed her involvement in the underlying bankruptcy
proceeding, the Board ruled that she had a duty to supplement her disclosure with additional
information and specifically identify her involvement in an adversary proceeding within the
bankruptcy suit, and her failure to do so indicated a lack of respect for the judicial process. 

 We cannot agree. Adversary proceedings in bankruptcy cases have been described
as "discrete units within a larger case." See Orix Credit Alliance v. Heard Family Trucking (In re
Heard Family Trucking), 41 F.3d 1027, 1029 (5th Cir. 1995) (emphasis added). A reasonable
interpretation of the Board's request, then, is that disclosure of the main case is sufficiently
responsive and any ancillary proceedings stemming from the main case need not be specifically
identified since they are subsumed by the main case. (6) If the Board intended for applicants to identify
specific adversary proceedings in addition to disclosing the underlying suit, it did not clearly express
this intent in its inquiry. The Board argues that "[a]lthough the existence of the adversary proceeding
may well be apparent on review of the docket sheet of the main bankruptcy case, the Board's
investigators would not know to look for the adversary proceeding unless it was disclosed by the
applicant." However, this could also be true of a hearing or dispute within a state court case, and
yet the Board does not insist that an applicant must disclose every contested evidentiary hearing,
proceeding, or injunction action that may occur during the pendency of a state court suit, even though
many may even be subject to litigation and appeal. We find no evidence in the record indicating that
Arlitt's failure to identify an adversary proceeding arising within a bankruptcy suit that had already
been disclosed to the Board is tantamount to a failure to disclose her involvement in the proceeding
itself.

 More importantly, the Board's ultimate finding that Arlitt possesses the character trait
of dishonesty based on this failure to identify is not reasonably supported by substantial evidence. 
Arlitt explained during the Board hearing that she had reported the adversary proceeding to her
attorney. Like the trial court, Arlitt's attorney determined that identification of the adversary
proceeding to the Board was not necessary since Arlitt had already disclosed the underlying
bankruptcy suit. There is no other evidence in the record suggesting that Arlitt's failure to identify
the bankruptcy-related adversary proceeding evidenced the character trait of dishonesty. (7)

 In contrast, the Board's findings that Arlitt had been sanctioned twice as a party are
supported by substantial evidence, and Arlitt does not argue to the contrary. Obviously, sanctions
are generally imposed against a party or attorney for violating appropriate standards or rules and
should be avoided. See TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 922 (Tex.
1991) (Gonzalez, J., concurring) ("Sanctions are tools to be used by a court to right a wrong
committed by a litigant."). However, the inference that sanctions automatically demonstrate a lack
of respect for the judicial process or that these two sanctions did so is not borne out by substantial
evidence in this record. See id. (noting that sanctionable conduct may not necessarily be ethical
violation) (citing Golden Eagle Distrib. Corp. v Burroughs Corp., 801 F.2d 1531, 1538-39 (9th Cir.
1986)).

 The first of the two sanctions was assessed against Arlitt for violation of rule 9011. 
Rule 9011 states:


(b) Representations to the court. By presenting to the court (whether by signing,
filing, submitting, or later advocating) a petition, pleading, written motion, or
other paper, an attorney or unrepresented party is certifying that to the best of the
person's knowledge, information, and belief, formed after an inquiry reasonable
under the circumstances,--


 (1) it is not being presented for any improper purpose, such as to harass or to
cause unnecessary delay or needless increase in the cost of litigation;


 (2) the claims, defenses, and other legal contentions therein are warranted by
existing law or by a nonfrivolous argument for the extension, modification,
or reversal of existing law or the establishment of new law;


 (3) the allegations and other factual contentions have evidentiary support or,
if specifically so identified, are likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery; and


 (4) the denials of factual contentions are warranted on the evidence or, if
specifically so identified, are reasonably based on a lack of information or
belief.


(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court
determines that subdivision (b) has been violated, the court may, subject to the
conditions stated below, impose an appropriate sanction upon the attorneys, law
firms, or parties that have violated subdivision (b) or are responsible for the
violation.



Fed. R. Bankr. P. 9011. When questioned during the Board hearing about the sanction, Arlitt could
not recall the precise reason for the sanction, other than that "[t]he Judge didn't want any more
filings with the Bankruptcy Court." She was not questioned further concerning the basis for the
sanction. The record is silent as to what led to the sanction against Arlitt, other than a general
violation of the bankruptcy rule. (8) The fact that a party involved in litigation was sanctioned, standing
alone, cannot conclusively indicate a prospective attorney's lack of respect for the judicial process
where there is no evidence in the record demonstrating the basis for the sanction. Accordingly, we
affirm the trial court's remand of this issue to the Board for further inquiry.

 Similarly, the Board found that Arlitt was sanctioned "for filing and obtaining an
order returning her temporary restraining order bond, ex parte, on her own behalf, even though she
was represented by counsel in the matter," and this sanction is "indicative of the character trait of
lack of respect for the judicial process." The order awarding sanctions against Arlitt, however, states
the basis for the sanctions as, "The Court finds that [Arlitt] filed and obtained an order returning her
temporary restraining order bond, ex parte, without notice to the Defendants, and obtained a refund
of the TRO bond." Thus, apparently Arlitt was not sanctioned for signing pleadings pro se while
represented by counsel, as the Board's findings imply. Rather, Arlitt was sanctioned for going to the
court ex parte without notice to the other side and getting a bond released to her. There is no
evidence in the record indicating that Arlitt, who has passed the Bar exam but is as yet unlicensed
and therefore has not yet practiced law, was aware her ex parte conduct was improper. Ignorance
alone does not indicate a lack of respect for the judicial process, and the record does not reflect that
Arlitt's actions were motivated by anything other than ignorance. Thus, the trial court properly
remanded this issue to the Board to further develop the record.

 Finally, the fact that a judge in an ongoing dispute involving Arlitt indicated in a
telephone conference that the court might impose additional sanctions against her does not constitute
substantial evidence signifying the character trait of lack of respect for the judicial process. Even
if substantial evidence existed to support the Board's underlying finding of fact that Arlitt might be
sanctioned in the future, that fact, without more, cannot support a finding that she lacked respect for
the judicial process. The only evidence considered by the Board with respect to this finding was
testimony from Arlitt's attorney who represents her in the ongoing cause. He stated that during a
telephone conference the day before the Board hearing, the judge mentioned that he would be
sanctioning all parties to the lawsuit. However, the record includes no evidence reflecting the reason
for this statement or that the judge ever reduced this sentiment to writing or formally ordered Arlitt
to pay monetary sanctions. Again, without the basis for the proposed sanction, this statement cannot
constitute substantial evidence to support the conclusion that Arlitt lacks respect for the judicial
process, and we thus affirm the trial court's remand of this issue to the Board.


CONCLUSION

 We hold that the Board's findings that Arlitt possesses the negative character traits
of dishonesty and lack of respect for the judicial process are not supported by substantial evidence. 
Therefore, we affirm the trial court's judgment reversing the Board's order and remanding the cause
to the Board.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson.

Affirmed

Filed: July 26, 2001

Do Not Publish
1. The rules governing admission to the State Bar of Texas describe good moral character as


a functional assessment of character and fitness of a prospective lawyer. The purpose
of requiring an Applicant to possess good moral character is to exclude from the practice
of law those persons possessing character traits that are likely to result in injury to future
clients, in the obstruction of the administration of justice, or in a violation of the Texas
Disciplinary Rules of Professional Conduct. These character traits usually involve either
dishonesty or lack of trustworthiness in carrying out responsibilities. There may be other
character traits that are relevant in the admission process, but such traits must have a
rational connection with the Applicant's present fitness or capacity to practice law and
accordingly must relate to the legitimate interests of Texas in protecting prospective
clients and in safeguarding the system of justice within Texas.


Tex. R. Govern. Bar Adm'n IV(b).
2. These facts are compiled from a review of the record, including the transcript of the Board
hearing and both parties' exhibits. Several of the documents referenced in the Board hearing and
in the parties' briefs to this Court were not included in the record. Thus, we rely on the testimony
before the Board in constructing a chronology of the events in the bankruptcy proceeding.
3. During the hearing before the trial court, the court characterized Arlitt's filing of the two
documents as follows:


[Arlitt] is claiming a homestead property interest in the [Bexar] property, which is
completely appropriate given that her first claim was set aside and the court said, no,
that's not your homestead [referring to the Wilson tract].


 Well, if that's not her homestead, then the [Bexar] property where she has lived
since June 16, 1989, is her homestead. There's no falsehood in saying I think Property
A is my homestead and that's what I am claiming. And then if you're told by the Court,
no, Property A isn't, saying well, if Property A isn't, then Property B is, particularly
when you have accurately told everybody exactly where you were living when.
4. The 1995 affidavit includes pages one, two, and three, and then jumps ahead to page eleven. 
Similarly, the 1996 response contains pages one through four and page sixteen.
5. The record does not reveal the nature of the adversary proceeding.
6. For example, the trial court's comments reflect that it interpreted "any suit or proceeding" as
follows:


[A]n adversary proceeding is part of the main [bankruptcy] case. An adversary
proceeding is basically a lawsuit or dispute that is inside the main case. And if you
disclose the main case then all the information about--that would be like saying in state
court that a fellow didn't disclose that he had a contested hearing on a motion, even
though he disclosed the cause number of the case.
7. The Board argues that because Arlitt disclosed her involvement in other adversary proceedings,
but failed to identify this one, which happened to result in sanctions against her, this evidences her
trait of dishonesty. While these facts may cast suspicion on Arlitt's motivations in failing to identify
the proceeding, mere suspicion does not constitute substantial evidence.
8. The trial court observed: "There's just no substantial evidence to support the conclusion that
one sanction for not signing pleadings--now, maybe there's more to it than that, but it's sure not
here in the record." The trial court was apparently under the impression that the sanction must have
been for "failure to sign pleadings and give an address." While the rule does address signatures on
pleadings in subsection (a), sanctions for violations of the rule are prescribed only for violations of
subsection (b), quoted above.



="BR1">

 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson.

Affirmed

Filed: July 26, 2001

Do Not Publish
1. The rules governing admission to the State Bar of Texas describe good moral character as


a functional assessment of character and fitness of a prospective lawyer. The purpose
of requiring an Applicant to possess good moral character is to exclude from the practice
of law those persons possessing character traits that are likely to result in injury to future
clients, in the obstruction of the administration of justice, or in a violation of the Texas
Disciplinary Rules of Professional Conduct. These character traits usually involve either
dishonesty or lack of tru