**BOARD OF LAW EXAMINERS OF THE STATE OF TEXAS,**
Appellant,

v.

**Douglas M. COULSON, Appellee.**

No. 03–00–00798–CV.

Court of Appeals of Texas,
Austin.

May 31, 2001.

Rehearing Overruled July 26, 2001.

Raymond C. Winter, Assistant Attorney General, Administrative Law Division, Austin, for appellant.

Jane Webre, Scott, Douglass & McConnico, L.L.P., Austin, for appellee.

Before Justices KIDD, B.A. SMITH and PURYEAR.

PURYEAR, Justice.

The Board of Law Examiners of the State of Texas (the "Board") appeals the trial court's reversal of a Board order that recommended the issuance of a probationary law license to Douglas M. Coulson. The Board concluded that Coulson had a possible chemical dependency and denied Coulson a regular law license based on the connection between the possible chemical dependency and the likelihood that Coulson might fail to properly discharge his duties as a lawyer. The trial court reversed the order on the following two grounds: (1) the Board is required to find that the applicant suffers from a present chemical dependency; and (2) the Board's conclusions were not supported by substantial evidence. We will affirm the judgment of the trial court on both grounds.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 1999, Coulson applied for admission to the Bar of Texas. Coulson, as required, disclosed to the Board his past history of alcohol and drug abuse. *See* Tex.R. Governing Bar Admission 6. Coulson revealed that in late 1988 through early 1989, at age 19, he underwent treat-

ment for alcohol and substance abuse. Coulson also disclosed that before treatment he had been arrested for disorderly conduct and public intoxication on two separate occasions in 1987 and 1988.

The Board made a preliminary determination that, ten years after treatment, Coulson may suffer from chemical dependency. The Board then requested Coulson to be evaluated pursuant to Rule 10(b)(1) of the Rules Governing Admission to the Bar of Texas (the "Board Rules"). *See id.* 10(b)(1). Coulson met with Karen McKibben, a Board evaluator and a licensed social worker. McKibben concluded in her evaluation report to the Board that Coulson did not suffer from a present chemical dependency. She expressed concerns about Coulson drinking minor amounts of alcohol given his past addictions but stated that she would not consider Coulson unable to competently provide legal services or advice. McKibben, however, did recommend that Coulson abstain from all mood altering chemicals, including alcohol, attend weekly Alcoholics Anonymous meetings for several months, and go to counseling.

The Board then held a hearing to determine whether Coulson was suffering from chemical dependency. At the hearing, Coulson testified and McKibben's report was presented as evidence. Coulson also presented an evaluation report conducted by Dr. Carole Ann Busick, a licensed psychologist and certified Master Addiction Counselor. Dr. Busick concluded in her report that Coulson did not suffer from a present chemical dependency, despite his past history of substance abuse.

Coulson testified that he had turned his life around after he went through treatment. Coulson testified that since 1990 he has not used any illegal drugs and has only consumed minor amounts of alcohol a few times per year. Coulson has earned a

bachelor's and a master's degree, and graduated in the top third of his class at Tulane Law School. Coulson married in his first year of law school, and his wife testified that she only saw Coulson drink lightly and that she never saw him intoxicated.

Coulson's father testified to his son's reform. His father testified that in the last ten years he only saw Coulson drink one glass of champagne, which was at his wedding. Coulson's employer also testified in an affidavit that Coulson did not exhibit any signs of chemical dependency. Matthew Sheynes, a friend and a classmate at Tulane Law School, testified in an affidavit that Coulson was a serious student who was devoted to his wife. Sheynes also testified that he never saw Coulson drink.

After the hearing, the Board issued its order containing two conclusions of law:

1. There is a clear and rational connection between Applicant's *possible* chemical dependency, ... and the likelihood that he *might* fail to discharge properly his duties to a client, a court, or the legal profession if he were recommended for a regular license to practice law at this time.

2. Applicant's present good moral character and fitness should be conditionally approved and, for the protection of the public, he should be recommended for a probationary license to expire two years after the date it is issued.

(Emphasis added.) The probationary license was also subject to Coulson's compliance with twenty conditions, including working faithfully at suitable employment, not committing any offense against the laws of Texas or any other state or the United States, and not engaging in any

conduct that evidences a lack of good moral character.[1]

Coulson appealed the Board's order to the trial court. The trial court found that section 82.038 of the Texas Government Code required the Board to find that the applicant presently suffers from chemical dependency before imposing a probationary license. *See* Tex. Gov't Code Ann. § 82.038 (West 1998). The trial court also found that the Board's first conclusion of law was not supported by substantial evidence. The trial court, therefore, reversed the Board's order for a probationary license and ordered that the Board recommend Coulson for a regular license. The Board then perfected this appeal.

## STANDARD OF REVIEW

▬ The central issue on appeal is whether the Board's finding of a possible chemical dependency is legally sufficient to support the Board's denial of a regular law license. The relevant provisions include sections 82.028 and 82.038 of the Texas Government Code and Board Rule 16(a)(1). *Id.* §§ 82.028, 82.038; Tex.R. Governing Bar Admission 16(a)(1). The cardinal rule of statutory construction is to ascertain and follow the legislature's intent. *Citizens Bank v. First State Bank, Hearne,* 580 S.W.2d 344, 348 (Tex.1979); *Minton v. Frank,* 545 S.W.2d 442, 445 (Tex.1976). We ascertain that intent by looking initially at the language used in the statute. *Jones v. Del Andersen & Assocs.,* 539 S.W.2d 348, 350 (Tex.1976); *Railroad Comm'n v. Miller,* 434 S.W.2d 670, 672 (Tex.1968). The words in the statute should be interpreted according to their ordinary meaning; they are not to be interpreted in an exaggerated, forced, or

strained manner. *Howell v. Mauzy,* 899 S.W.2d 690, 704 (Tex.App.—Austin 1994, writ denied).

The Board also appeals the trial court's finding that the Board's order was not supported by substantial evidence. When the Board makes a negative character and fitness determination, an applicant is entitled to judicial review of the Board's decision. *See* Tex.R. Governing Bar Admission 15(i); *see also Unglaub v. Board of Law Exam'rs,* 979 S.W.2d 842, 845 (Tex. App.—Austin 1998, pet denied.); *Board of Law Exam'rs v. Allen,* 908 S.W.2d 319, 321 (Tex.App.—Austin 1995, no writ). The reviewing court may affirm or remand the matter to the Board, depending on whether the decision is "reasonably supported by substantial evidence." Tex.R. Governing Bar Admission 15(i)(5).

▬ In conducting a substantial evidence review, we must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *Unglaub,* 979 S.W.2d at 845 (citing *Texas State Bd. of Dental Exam'rs v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988)). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *Id.* Although substantial evidence is more than a mere scintilla, the evidence may actually preponderate against the decision of the agency and nonetheless amount to substantial evidence. *Allen,* 908 S.W.2d at 321 (citing *City of El Paso v. Public Util. Comm'n,* 883 S.W.2d 179, 185 (Tex.1994)).

---

**1.** Although we do not find it necessary to address these conditions, we are troubled by the vague nature of many of the conditions imposed by the Board's order. *See Unglaub*

*v. Board of Law Exam'rs,* 979 S.W.2d 842, 851 (Tex.App.—Austin 1998, pet denied.); *Board of Law Exam'rs v. Allen,* 908 S.W.2d 319, 322–23 (Tex.App.—Austin 1995, no writ).

## DISCUSSION

The Texas Supreme Court maintains the exclusive authority to issue licenses to applicants seeking admission into the Texas Bar. Tex. Gov't Code Ann. § 82.021 (West 1998). The Board, however, acting pursuant to the authority of the supreme court, supervises bar admissions and thereby plays a key role in maintaining the integrity and character of the Texas Bar. *Unglaub,* 979 S.W.2d at 845 (citing *Board of Law Exam'rs v. Stevens,* 868 S.W.2d 773, 776 (Tex.1994)). The supreme court vests the Board with considerable discretion in evaluating applicants based upon the promulgated admission standards. *Id.* Bar admission affirmatively requires "good moral character" and "fitness" to practice law. Tex.R. Governing Bar Admission 4(a). It is the Board's duty to evaluate each applicant's present moral character and fitness before making a recommendation to the supreme court regarding licensing. *See* Tex. Gov't Code Ann. § 82.004 (West 1998).

### *Present Chemical Dependency*

■ The Board may recommend a regular law license if it finds good moral character and fitness. "The fitness required is a present fitness, and prior mental or emotional illnesses or conditions are relevant only so far as they indicate the existence of a present lack of fitness." Tex.R. Governing Bar Admission 4(c); *see also Unglaub,* 979 S.W.2d at 846. In making a fitness determination, the Board seeks to exclude from the practice of law any person having a mental or emotional illness or condition that would likely prevent the person from carrying out duties to clients, courts, or the profession. Tex.R. Governing Bar Admission 4(c). The Board, therefore, may deny a regular license and recommend instead a probationary license for those applicants suffering from *present* chemical dependency. *Id.* 16(a)(1); Tex. Gov't Code

Ann. §§ 82.028(c), 82.038 (emphasis added). Chemical dependency is defined by the statute and by the Board Rule as "(A) the abuse of alcohol or a controlled substance; (B) the pathological use of alcohol or a controlled substance that chronically impairs the applicant's ability to competently provide legal advice or services; or (C) a physiological or physical dependence on alcohol or a controlled substance." Tex.R. Governing Bar Admission 1(a)(5); Tex. Gov't Code Ann. § 82.038(i). A probationary license can be issued in lieu of a regular license only if a *present* chemical dependency is found. *Unglaub,* 979 S.W.2d at 846 (holding that the Board must establish a present chemical dependency to justify finding a continuing lack of fitness where past addictions are at issue).

The Board's first conclusion of law in its order rests solely on the finding of a *possible* chemical dependency creating a likelihood that Coulson *might* fail in discharging his duties as an attorney. The Board concedes that it did not find that Coulson suffers from a present chemical dependency. The Board's conclusion does not mention any other factor that could have influenced its decision to deny a regular license and instead recommend a probationary license. Because its conclusion deals solely with chemical dependency, the Board's findings and order fall squarely under Board Rule 16(a)(1), which states that the Board has the authority to issue a probationary license "when the Board determines that the Applicant *suffers* from chemical dependency...." Tex.R. Governing Bar Admission 16(a)(1) (emphasis added). The rule requires a *present* chemical dependency, not a *possible* dependency. Because the Board rested its conclusions of law on a possible dependency, the Board's order also fails to apply the appropriate statutory standards set forth for issuing probationary licenses under sec-

tions 82.028 and 82.038. Tex. Gov't Code Ann. §§ 82.028(c), 82.038.

Section 82.028, which governs assessment of fitness and denial of licenses, requires a finding of a present mental or emotional condition—in this case present chemical dependency—before the Board can deny a regular license. *Id.* § 82.028(c). According to this provision, the Board may not recommend a denial of a regular law license because of a deficiency in moral character or fitness unless "the board finds a clear and rational connection between the applicant's *present* mental or emotional condition and the likelihood that the applicant will not discharge properly the applicant's responsibilities to a client, a court, or the legal profession. . . ." *Id.* (emphasis added).

■ The Board erred in its application of the standards set forth in section 82.028(c) in two ways. *See id.* First, the Board found only a *possible* chemical dependency where the statute requires a *present* condition. Second, the Board concluded that the possible dependency is linked with the likelihood that Coulson *might* not properly discharge his duties as a lawyer. The statute, however, requires the Board to link the dependency with the likelihood that the Applicant *will* not properly discharge his or her duties.

Section 82.038, which governs the Board's recommendation of probationary licenses for applicants suffering from chemical dependency, further emphasizes the requirement for finding a present chemical dependency. *Id.* § 82.038(a). This section of the Government Code states, "[i]f, after a moral character and fitness assessment, the Board of Law Examiners determines that the applicant *suffers* from chemical dependency, the board shall notify the applicant of its determination and the applicant's rights under this section." *Id.* (emphasis added). The stat-

ute does not address a possible chemical dependency; instead, the provision contemplates the Board finding a present dependency. The Board's first conclusion, therefore, fails to use the appropriate standard set forth in section 82.038 for finding a chemical dependency and recommending a probationary license on this basis. In addition, the Board failed to take into consideration this Court's opinion in *Unglaub*, which explicitly stated that the Board must establish *present* chemical dependency. *Unglaub*, 979 S.W.2d at 847. Therefore, we overrule the Board's first issue on appeal.

### Substantial Evidence

■ Even if the Board had used the proper statutory standard set forth for finding a present chemical dependency, the Board's first conclusion of law is not supported by substantial evidence. The Board presented no evidence of a present chemical dependency. Coulson testified that he had undergone treatment for his abuse of drugs and alcohol as a young man. Past treatment for substance abuse cannot be considered evidence of a present chemical dependency. *Id.* In *Unglaub*, we expressed our disapproval of the Board's use of evidence that an applicant had been active in Alcoholics Anonymous to support its finding of present chemical dependency. *Id.* This Court stated, "[w]e find it hard to imagine how anyone could overcome the stigma of chemical dependency under the Board's concept of present chemical dependency." *Id.*

■ The evidence revealed a pattern of Coulson's post-treatment conduct far removed from his earlier years of substance abuse. Coulson and his father testified that for ten years Coulson had not abused drugs and had only consumed minimal amounts of alcohol during that period. The Board's own evaluator, McKibben, in-

dicated in her report that Coulson was not presently suffering from any chemical dependency. She expressed concerns about his continuing use of even small amounts of alcohol given his past problems and made several recommendations. McKibben ultimately concluded that Coulson would not be incompetent as a lawyer and would be able to competently exercise his duties. Coulson also presented an independent evaluation by Dr. Busick, who concluded that Coulson did not presently suffer from a chemical dependency.

No other evidence, other than Coulson drinking small amounts of alcohol, was presented which indicated that he has a present chemical dependency. In its order, the Board relied upon the following evidence in making its decision: (1) Coulson's treatment for drug abuse in 1988 and 1989; (2) his two arrests for public intoxication in 1987 and 1988; (3) McKibben's concern about Coulson's continued consumption of alcohol; and (4) her recommendations that Coulson undergo counseling and attend Alcoholics Anonymous meetings. These facts do not support the finding of a present chemical dependency.

Further, the Board must show a clear and rational connection between chemical dependency and the likelihood that an Applicant will fail to properly discharge his or her duties as an attorney. The Board did not present any evidence establishing a connection between Coulson's behavior and a likelihood that he might not discharge his duties as a lawyer. The Board's own evaluator, McKibben, stated in her report that Coulson would be able to perform his duties as an attorney. Coulson's post-treatment achievements, academic and personal, suggest as much. Given the lack of substantial evidence, we overrule the Board's second issue on appeal.

## CONCLUSION

Because the Board based its first conclusion of law and ultimately its denial of a regular law license on a possible chemical dependency, the Board failed to utilize the appropriate legal standard set forth in the Texas Government Code, which requires a finding of a present chemical dependency before a regular law license can be denied and a probationary license can be recommended. The evidence does not support a finding of present chemical dependency. Finally, the evidence does not demonstrate the likelihood that Coulson will fail to properly discharge his duties as an attorney. Therefore, we affirm the trial court's reversal of the Board's order.