# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-06-00392-CV

Frank P. Santulli, III, Appellant

v.

Texas Board of Law Examiners, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-04-000418, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from a recommendation by appellee the Board of Law Examiners that appellant Frank P. Santulli, III's probationary license to practice law should be revoked. We affirm the trial court's order affirming the Board's recommendation.

On June 22, 2001, the Board approved an agreed order recommending Santulli for a two-year probationary license. Santulli, who was carrying a substantial amount of student loan and personal debt, had already entered into a debt management plan with Consumer Credit Counseling Services (CCCS) and had started making payments under that plan. In the agreed order, the Board required Santulli to make payments under the CCCS plan and in accordance with a student loan debt management program and to provide proof of those payments periodically.[1] Santulli initially met those conditions but by May 2002 had fallen behind on both his student loans and his CCCS plan.

---

[1] Although the 2001 agreed order is attached as an exhibit to Santulli's brief, it does not appear in the record. Santulli testified in December 2002 that the original order required him to make payments on his student loans and under his CCCS debt management plan.

On December 6, 2002, the Board held a hearing to determine whether Santulli's license should be revoked due to his failure to meet the conditions set out in the agreed order. Santulli testified that due to family illnesses and changes in his work status, he had fallen behind on his CCCS plan and had not made payments since December 2001; he had arranged for his student loans to be deferred. Although Santulli did not want to file for bankruptcy, he testified that he was "looking into it." Santulli had not yet retained a bankruptcy attorney, but he said he was supposed to meet with one in mid-January 2003. The Board expressed concern that Santulli could find himself "in a situation where you're in so much debt and under so much pressure that there are opportunities and temptation either to short-shrift your clients or, you know, in the worst case scenario, convert money from your clients to take care of those debts." The Board asked, "[I]f the Board were to see fit to extend your probationary license for another six months, that would in effect give you one year in which to consult with your bankruptcy attorney, consult with business planners and be prepared to present us with a business plan, could you commit to having a comprehensive plan to us before the expiration of that probationary license?" Santulli answered that a six-month extension would be "more than generous." One Board member said, "I don't doubt that you have good intentions and that you have the intent to do these things, but you need a plan. . . . Saying 'I have an intention to pay it' is not going to cut it." Santulli agreed and said he would "[a]bsolutely" decide about whether to file for bankruptcy in mid-January and would let the Board know his decision "[i]n detail."

In an order dated December 12, 2002, the Board granted Santulli a six-month extension with an amended set of conditions, including requiring him to "make suitable arrangements for payment or discharge of all of his past due debts during the term of his

2

probationary license, and [to] detail any such arrangements with each of his periodic questionnaires" ("Condition One"). The Board's order found that Santulli's failure to comply with the payment conditions of the agreed order was "indicative of the character trait of a lack of trustworthiness in carrying out responsibilities" and concluded that there was a clear and rational connection between Santulli's "lack of trustworthiness in carrying out responsibilities . . . and the likelihood that Mr. Santulli would harm a client, obstruct the administration of justice, or violate" the disciplinary rules. The order included a "conditional finding of good moral character and fitness, predicated on Mr. Santulli's faithful compliance with the conditions of this order," but provided that, in the event Santulli's probationary license was revoked due to violations of any of the order's conditions, such revocation would "conclusively establish on the part of Mr. Santulli a lack of trustworthiness in carrying out responsibilities, making it likely that he would injure a client, obstruct the administration of justice, or violate the disciplinary rules of professional conduct." The order placed on Santulli the burden of presenting "evidence addressing . . . any character and/or fitness issues covered in this Order." Santulli did not object to or seek judicial review of the 2002 order.

On December 5, 2003, the Board held another hearing related to Santulli's probationary license. Santulli testified that he had not made any more payments on his debt or filed a petition in bankruptcy. He explained that at the end of February 2003, he had "made arrangements" with a bankruptcy attorney, doing some family-law work in exchange for bankruptcy assistance, but that he learned in August that the attorney had moved out of state. Santulli hired another attorney sometime in October, and Santulli and his new attorney had decided to proceed with a bankruptcy petition. Santulli believed the bankruptcy petition would be filed within 30 days. He

3

asked the Board to give him another month to file for bankruptcy, explaining that he had recently been hired to lead a family-law section of a law firm and that he would restart making payments on his student loans at the end of December 2003.

On December 11, 2003, the Board issued an order finding that Santulli had violated Condition One of his probationary license by failing to make suitable arrangements to pay or discharge of all of his past due debts. The Board determined that Santulli's failure in this regard indicated a lack of financial responsibility, trustworthiness, and the good moral character required for bar admission. The Board concluded that there was a clear and rational connection between Santulli's lack of financial responsibility and the likelihood that he would harm a client, obstruct the administration of justice, or violate a provision of the disciplinary rules and recommended that Santulli's probationary license be revoked. *See* Tex. R. Govern. Bar Adm'n XVI(g)(2)(B) (West Supp. 2008) (after hearing, "upon a finding that a condition of the Probationary License has been violated," Board may recommend termination or revocation of probationary license).[2]

Santulli sought judicial review of the Board's 2003 order. The trial court considered the administrative record and affirmed the Board's decision, finding that the order was supported by substantial evidence. On appeal, Santulli complains that the Board's order was not supported by substantial evidence, that Condition One was arbitrary or capricious because it was not supported by substantial evidence, and that the Board erred in finding that Santulli lacks the good moral character required for bar admission. We affirm the trial court's order.

---

[2] For convenience, we will cite to the current rules unless they have materially changed.

**Discussion**

An applicant for bar admission is entitled to judicial review of a negative character determination by the Board. *See id.* R. XV(k) (West Supp. 2008); *Board of Law Exam'rs v. Coulson*, 48 S.W.3d 841, 844 (Tex. App.—Austin 2001, pet. denied). The Board's decision is reviewed under a "substantial evidence" standard, and the reviewing court may either affirm the determination if it is "reasonably supported by substantial evidence" or remand the matter to the Board. Tex. R. Govern. Bar Adm'n XV(k)(5); *Coulson*, 48 S.W.3d at 844. An applicant complaining of the Board's decision has the burden of showing a lack of substantial evidence. *Unglaub v. Board of Law Exam'rs*, 979 S.W.2d 842, 845 (Tex. App.—Austin 1998, pet denied.).

When reviewing a decision for substantial evidence, the test "is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). We consider only the record on which the Board relied in reaching its decision and will not substitute our judgment for that of the Board. *Coulson*, 48 S.W.3d at 844. Our review requires that there be more than a mere scintilla of evidence, but the evidence "may actually preponderate against the decision" of the Board and still amount to substantial evidence. *Id.* We are concerned with the reasonableness of the Board's order, not its correctness. *See State v. Public Util. Comm'n*, 883 S.W.2d 190, 203 (Tex. 1994). "If reasonable minds could have reached the conclusion that the Board reached on the record presented, then we must uphold its decision." *Board of Law Exam'rs v. Stevens*, 868 S.W.2d 773, 778 (Tex. 1994).

Santulli asserts that (1) the trial court erred in determining that the Board's order was supported by substantial evidence, (2) Condition One was arbitrary or capricious and not supported

5

by substantial evidence,[3] and (3) the Board erred in determining that Santulli lacked good moral character. Santulli's complaints are based largely on his claim that the term "suitable arrangements" in Condition One is ambiguous and unenforceable because the order does not specify "what suitable arrangements would be acceptable." Santulli also argues that "the Board never stated a deadline for the suitable arrangements to be concluded." He goes on to argue that even aside from those failings, the record is clear that he "made arrangements to comply with the conditions of his probationary license." We first address Santulli's complaints related to Condition One.

Santulli did not complain of or seek judicial review of the 2002 order that imposed Condition One. *See* Tex. R. Govern. Bar Adm'n XV(k)(1) (applicant must institute proceedings for judicial review of Board decisions within sixty days after decision is mailed to applicant). Further, Santulli did not assert before the trial court that the condition was ambiguous. Thus, he may not attack the 2002 order in this suit for review of the 2003 order.

Further, we disagree that the term "suitable arrangements" was ambiguous as used in the order. The testimony from the 2002 hearing, where the Board granted Santulli a "more than generous" six-month extension, established what the parties understood "suitable arrangements" to mean. The Board told Santulli that it wanted a "comprehensive plan" regarding the payment or discharge of his debt and that having the intention to pay or manage his debt would not suffice. The panel wanted Santulli to "account for this debt in such a way that we can be assured that you're not

---

[3] As part of this issue, Santulli argues that the Board made an "impulsive presumption that denies Santulli his Constitutional right to Liberty and the pursuit of the profession of his choice in direct violation of Santulli's Due Process rights." However, Santulli did not raise his "impulsive presumption" complaint before the trial court, nor does he provide argument explaining this claim. *See* Tex. R. App. P. 33.1(a), 38.1(h). Thus, Santulli has not preserved this complaint for our review.

a danger to the public," and it told Santulli that merely hiring an attorney to explore bankruptcy options did not and would not satisfy its concerns. Santulli expressed no confusion about what the Board required of him and never complained that the condition was ambiguous until this appeal. We overrule Santulli's complaints related to Condition One's asserted ambiguities.[4]

We next consider whether Santulli has met his burden of showing that the order is not supported by substantial evidence, starting with whether the evidence supports a finding that Santulli failed to make suitable arrangements to pay or discharge his debts.

In December 2002, the Board questioned Santulli about his finances and what he planned to do about his debt load. He was told in no uncertain terms that he had one year to take action toward managing his debt and that merely intending to discharge his debts was not enough. A year later, Santulli had done nothing toward discharging or paying his debts other than having secured a new bankruptcy attorney in October 2003. Although Santulli made arrangements with an attorney in late February or early March 2003, he did not attempt to contact the attorney until June or July. He learned in August or September that the attorney had moved out of state, did not hire another lawyer until October, and by December, had not filed for bankruptcy, although he testified that he intended to do so in the next month. Santulli was cautioned in 2002 that good intentions were not enough and that he would have to show progress toward discharging his debts, but he was in essentially the same position a year later, despite the Board's cautions and a six-month extension.

---

[4] We also reject Santulli's claim that the Board did not set a deadline by which the condition was to be satisfied. The 2002 order states, "Mr. Santulli shall make suitable arrangements for payment or discharge of all of his past due debts during the term of his probationary license." Thus, the deadline was six months after the original license-expiration date.

Santulli argues that the evidence "clearly shows that Appellant had made arrangements to comply with" Condition One, pointing to evidence included in his brief's appendix showing that he had been released of all dischargeable debts through a bankruptcy proceeding. However, that evidence was not before the Board and, therefore, we may not consider it. *See id.* (trial court shall "determine from the certified record on file whether or not the Board's decision is reasonably supported by substantial evidence"). We have already held that the Board's order was not improperly vague, and the evidence shows that two and one-half years after being given a probationary license conditioned in part on paying or discharging his debts and one year after being given an extension and being told what would be necessary to satisfy the Board's concerns, Santulli had not made any progress with regard to his debts other than to develop a more concrete intention to file for bankruptcy within a month. We hold that substantial evidence supports the Board's finding that Santulli violated the conditions of his probationary license.[5]

In his third issue, Santulli attacks the Board's finding that he lacks the good moral character requisite for bar admission, asserting that the Board failed to prove a clear and rational connection between Santulli's character traits and the possibility that a client might be injured or that

---

[5] Santulli also asserts that the order was arbitrary and capricious. In narrowly defined circumstances, an agency decision supported by substantial evidence may be invalid because it is arbitrary. *See Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex. 1984); *Lewis v. Metropolitan Sav. & Loan Ass'n*, 550 S.W.2d 11, 16 (Tex. 1977); *Texas State Bd. of Dental Exam'rs v. Silagi*, 766 S.W.2d 280, 285 (Tex. App.—El Paso 1989, writ denied) (op. on reh'g). However, "the finding of an act, which is supported by substantial evidence, to be arbitrary and capricious must be based on a violation of due process or some other unfair or unreasonable conduct that shocks the conscience." *Silagi*, 766 S.W.2d at 285. There is no due process violation here, nor does the record reflect unreasonable conduct that shocks the conscience.

justice might be obstructed. He argues that the Board should have proved that it followed certain mandates he argues were set out in *Konigsberg v. State Bar of California*, 353 U.S. 252 (1957).

In *Konigsberg*, the California Bar rejected a bar application in part because the applicant "failed to demonstrate that he was a person of good moral character." *Id.* at 259. The Court reviewed the record and the California Bar's arguments and held that "there is no evidence in the record which rationally justifies a finding that Konigsberg failed to establish his good moral character." *Id.* at 273. We do not read *Konigsberg* as requiring the Board to prove that it conducted a specific four-prong test, as asserted by Santulli.[6] Instead, we read the opinion to require that there be a rational basis for the Board's order, supported by "some authentic reliable evidence." *See id.* Thus, the Board's order satisfies *Konigsberg* if it is supported by reliable evidence such that "a reasonable man could fairly find that there were substantial doubts about [Santulli's] 'honesty, fairness and respect for the rights of others and for the laws of the state and nation.'" *See id.* at 264; *see also* Tex. Gov't Code Ann. § 82.028(c)(1) (West 2005) (Board may not recommend license denial unless it finds "clear and rational connection between a character trait of the applicant and the likelihood that the applicant would injure a client or obstruct the administration of justice").

In its 2003 order, the Board found that Santulli's violation of his amended probationary license was "indicative of a lack of trustworthiness in carrying out responsibilities,

---

[6] Santulli argues that the Board must "prove that its denial is based upon:

1. Authentic evidence;
2. Reliable evidence;
3. Applicant's unlawful or immoral actions; and
4. Applicant's unlawful or immoral actions reflect adversely on Applicant."

9

especially given his prior failure to comply with the conditions of his agreed order with the Board," and concluded that there was "a clear and rational connection between Mr. Santulli's lack of trustworthiness in carrying out responsibilities, as evidenced by his failure to comply with condition 1 of his probationary license as amended, . . . and the likelihood that he would harm a client, obstruct the administration of justice, or violate the Texas Disciplinary Rules of Professional Conduct," and that his "failure to comply with condition 1 of his probationary license as amended is indicative of a lack of the good moral character required for admission." We must give appropriate deference to the Board's determination of whether there is a clear and rational connection between Santulli's financial irresponsibility and failure to meet his obligations under previous Board orders and the substantial possibility of harm to future clients or the obstruction of justice and must affirm if there is substantial evidence supporting the Board's decision. *See Stevens*, 868 S.W.2d at 776, 778 (Board has "considerable discretion" in applying admission standards).

The supreme court has held that the ethical standards required for admission to the Texas Bar demand more than "an absence of convictions involving serious crimes and crimes of moral turpitude" or the "mere absence of gross misbehavior." *Id*. at 776. Instead, the Board must affirmatively determine that an applicant has the good moral character and is fit to practice law. *Id*.; *see* Tex. R. Govern. Bar Adm'n IV(a) (West Supp. 2008). Under the rules governing admission to the Texas Bar, "[g]ood moral character is a functional assessment of character and fitness of a prospective lawyer," and the purpose of requiring present good moral character is to exclude from bar admission persons with character traits that "are likely to result in injury to future clients, in the obstruction of the administration of justice, or in a violation" of the rules of professional conduct.

10

Tex. R. Govern. Bar Adm'n IV(b). "These character traits usually involve either dishonesty or lack of trustworthiness in carrying out responsibilities." *Id*. The supreme court has held that evidence of a "longstanding lack of financial responsibility" may be, on a case-by-case basis, "substantial evidence that [an applicant] suffers from a 'persistent inability to discharge, or unreliability in carrying out, significant obligations.'" *Stevens*, 868 S.W.2d at 781 (quoting Tex. Disciplinary R. Prof'l Conduct Terminology, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A, art. X, § 9 (West 2005) (defining "fitness")). "[T]here is a 'clear and rational connection' between . . . financial irresponsibility on the one hand, and 'the likelihood that [an] applicant would injure a client,' on the other." *Id.* (quoting Tex. Gov't Code Ann. § 82.028(c)(1)).

The 2003 hearing was held more than two years after Santulli agreed to the original order that required him to make payments under his CCCS and student loan debt-management plans. At the time of the hearing, Santulli could do no more than tell the Board that he planned to file for bankruptcy in the next month, which is essentially the same thing he told the Board a year earlier, during the 2002 hearing. In the intervening year, Santulli had not made any payments or made any arrangements to pay or discharge his debts; he "made arrangements" with one lawyer, whom he attempted to contact months later only to discover the attorney had moved away; and he testified that he had hired another attorney one to two months before the hearing but had not yet drawn up a petition or filed for bankruptcy. Santulli did not bring any documentation to the hearing showing that he was in the midst of filing or even preparing to file for bankruptcy, nor did he bring a contract or other proof that he had actually hired the second attorney or that the attorney was in the process of filing for bankruptcy on Santulli's behalf. We agree with the trial court that substantial evidence

11

supported the Board's determination that there is a clear and rational connection between Santulli's lack of trustworthiness or reliability in carrying out responsibilities and the likelihood that he will harm a client, obstruct the administration of justice, or violate the disciplinary rules.[7] *See id.*; *see also* Tex. R. Govern. Bar Adm'n IV(b). We overrule Santulli's third point of error.

## Conclusion

We recognize the serious consequences likely to befall Santulli due to the Board's order. However, we are limited in our consideration of this case to the record that was before the Board when it made its decision and cannot consider evidence that Santulli has since finalized a bankruptcy judgment, nor may we substitute our judgment for that of the Board. Substantial evidence supports the Board's findings that Santulli failed to comply with Condition One and that his failure to comply with that condition indicates a lack of trustworthiness in carrying out responsibilities. We affirm the order of the trial court affirming the Board's decision.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: April 10, 2009

_____

[7] We note that the 2002 order, which Santulli did not appeal, included the following language: "IT IS FURTHER ORDERED that any such revocation based on [Santulli's] failure to abide by the conditions of this order *shall conclusively establish . . . a lack of trustworthiness in carrying out responsibilities*, making it likely that he would injure a client, obstruct the administration of justice, or violate" the rules of professional conduct. (Emphasis added.)