# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00167-CV

**Kristofer Thomas Kastner, Appellant**

**v.**

**Texas Board of Law Examiners, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. D-1-GN-09-000548, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from the district court's judgment affirming a December 17, 2008 order of the Texas Board of Law Examiners ("the Board"). The issue on appeal is whether the Board's order, in which the Board determined that appellant does not possess the present good moral character and fitness for admission to the practice of law in Texas, is supported by substantial evidence. Finding that the Board's order is supported by substantial evidence, we will affirm the trial court's judgment.

## BACKGROUND

Appellant Kristofer Thomas Kastner ("Kastner") applied for admission to practice law in the State of Texas in 1999. After a hearing, the Texas Board of Law Examiners issued its January 2000 written order finding that Kastner did not possess the present good moral character or fitness required for admission to the Bar; the Board further determined that he suffered from

chemical dependency. The Board ordered that Kastner could petition for redetermination of his character and fitness no earlier than July 19, 2001. Kastner did not appeal or seek judicial review of this order, and it became final. *See* Tex. R. Gov. Bar Admis. XV(k)(1). Thus, he may not attack the January 2000 order in this suit for review of the December 2008 order.

In June 2005, Kastner filed a Supplemental Investigation form and what he termed an "Affidavit Addressing TBLE Order." He requested the opportunity to show that he had satisfied the curative measures specified in the January 2000 order. The Board staff investigated and, on October 18, 2005, issued a Preliminary Determination Letter indicating that Kastner still did not satisfy the requirements of good moral character and fitness and that he had failed to satisfy at least four curative measures stated in the January 2000 order.

Kastner requested a hearing, which was originally scheduled for August 2006. The Board sent Kastner a notice letter which set out the issues to be considered at the hearing, including whether he could establish that he had been rehabilitated from the problems noted in the January 2000 order and whether he had complied with the curative measures detailed in the order. For a variety of reasons, including the need for time for additional investigation into the issues, the hearing was continued and rescheduled for November 24, 2008. A letter from the Board's counsel to Kastner contained details on what would be addressed at the hearing. At Kastner's request, on November 10, 2008, the Board staff provided him supplemental written notice identifying specific issues to be addressed concerning his character and fitness, including matters and incidents occurring since the original notice letter in 2005.

The hearing was held November 24, 2008. The Board issued its written order December 17, 2008. The Board found from the evidence that Kastner had not complied with a number of curative measures it had directed him to complete; that certain of his conduct is indicative of dishonesty, a lack of trustworthiness in carrying out responsibilities, and a lack of respect for the law; and that Kastner lacked the present good moral character or fitness required for admission to practice law in Texas. The Board further concluded that there was a clear and rational connection between these shortcomings and Kastner's history of mental instability and personality disorder, finding it likely that, if licensed, Kastner would harm a client, obstruct the administration of justice, or violate the Texas Disciplinary Rules of Professional Conduct. The Board also concluded that there was a clear and rational connection between Kastner's history of mental instability and personality disorder and the likelihood that, if licensed, Kastner would fail to carry out his duties to clients, courts, or the profession, or harm a client, obstruct the administration of justice, or violate the Texas Disciplinary Rules of Professional Conduct.

## STANDARD OF REVIEW

An applicant for admission to the bar is entitled to judicial review of a negative character determination by the Board. *See* Tex. Rules Govern. Bar Adm'n R. XV(k) (West 2008); *Board of Law Exam'rs v. Coulson*, 48 S.W.3d 841, 844 (Tex. App.—Austin 2001, pet. denied). When the matter involves a redetermination of the applicant's character and fitness, the applicant and not the Board has the burden to demonstrate that he has been rehabilitated and that he currently possesses the present good moral character and fitness to practice law. Tex. Rules Govern. Bar Adm'n R. XV(j)(2) (West 2008). The Board's decision is reviewed under a substantial evidence

3

standard; the reviewing court may either affirm the Board's determination if it is reasonably supported by substantial evidence or remand the matter to the Board. *See id.* R. XV (k)(5); *Coulson*, 48 S.W.3d at 844. An applicant complaining of the Board's decision has the burden of showing a lack of substantial evidence in the record. *Unglaub v. Board of Law Exam'rs*, 979 S.W.2d 842, 845 (Tex. App.—Austin 1998, pet. denied). The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the one complaining to prove otherwise. *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).

When reviewing a decision for substantial evidence, the test is "whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). We consider only the record on which the Board relied in reaching its decision and will not substitute our judgment for that of the Board. *Coulson*, 48 S.W.3d at 844. Our review requires that there be more than a scintilla of evidence, but the evidence may actually preponderate against the decision of the Board and still amount to substantial evidence. *Id.* If reasonable minds could have reached the conclusion reached by the Board on the record presented, the appellate court must uphold the Board's decision. *Board of Law Exam'rs v. Stevens*, 868 S.W.2d 773, 778 (Tex. 1994).

### DISCUSSION

The Texas Government Code provides that the Board cannot recommend denial of a law license to an applicant on the grounds of moral character and fitness unless the Board finds a

clear and rational connection (1) between the applicant's character trait and the likelihood that applicant would injure a client or obstruct the administration of justice if licensed, or (2) between the applicant's present mental or emotional condition and the likelihood that the applicant will not properly discharge the responsibilities to a client if licensed. Tex. Gov't Code Ann. § 82.028 (West 2005). The rules promulgated by the Texas Supreme Court incorporate these statutory provisions and further expand on the basis and purpose of good moral character and fitness requirements. *See* Tex. Rules Govern. Bar Adm'n R. IV(b), (c). The Texas Disciplinary Rules of Professional Conduct also guide the Board's licensing determination in assessing the state's interest in protecting prospective clients and the Texas system of justice. *Stevens*, 868 S.W.2d at 777.

The Board's January 2000 order directed Kastner to perform or refrain from a number of curative measures in order to demonstrate his good moral character and fitness to practice law. Among these, he was required to commit no offense against the laws of Texas or any other state, to maintain suitable employment, to conduct his business and personal dealings in an ethical manner, to abstain from using alcohol or any mind-altering drug, and to attend meetings of Alcoholics Anonymous and keep records of attendance. At the November 24, 2008 hearing, it was Kastner's burden to prove his rehabilitation and possession of present good moral character and fitness. The record reflects that he had not met the Board's requirements and contains substantial evidence of these and additional matters that support the Board's unfavorable finding with respect to his request for redetermination.

5

Kastner attempts to assert a number of complaints on appeal, which he terms "Issues Presented," all of which he combines in one paragraph set out below in the manner exactly as written:

> The Texas Board of Law Examiners committed egregious and intentional error in the case and denied Kristofer Thomas Kastner due process and due course of law. insufficient time to argue the case. There was a failure of notice and failure to meet Texas Government Code 82.08. The 2008 order contained falsity and inaccuracy BLE ignored fact and law for the cases which were found in the record. BLE fails to meet any standards for failure to work or work at a law firm, miscounted the Guttermaxx case and ignored the law on whether Kastner can says he is a lawyer. BLE falsely alleged Kastner attempted to alter his medical records and that he failed to produce medical records. The testimony of Charles Covert should not have been allowed or found in the order. In total, BLE has issued a false order based on a gross violation of Kristofer Thomas Kastner's rights.

The purpose of the November 2008 hearing was to determine whether Kastner could show that he had complied with the Board's 2000 order and could demonstrate that he possessed the present good moral character and fitness to practice law. The Board failed to find that Kastner had met this burden and, in fact, found that Kastner did not possess the required criteria. We will interpret Kastner's issues to be an attempt to complain that the Board's December 2008 order was not supported by substantial evidence.

The Board's 2000 order required that Kastner commit no offense against the laws of Texas, any other state, or the United States. The record includes the following evidence. Kastner was arrested in Colorado on February 14, 2001 for driving under the influence, driving without a valid Colorado license, obstructing a peace officer, and having an unattended vehicle. Kastner pleaded guilty to driving under the influence and obstructing a peace officer and was placed

6

on probation for six months. He was arrested in Houston on December 7, 2002 for driving while intoxicated. He pleaded guilty and his sentence was assessed at 180 days in jail, probated for two years. He later violated the terms of his probation, to which violations he pleaded true, and his probation was revoked. On January 7, 2005, he was arrested, and on January 8th he was charged with criminal trespass at his mother's home in Harris County. The state moved to dismiss the charges at his mother's request, which the court granted, but he was subjected to a sixty-day restraining order containing a finding that he had been charged with family violence. While in Harris County jail in July of 2007, Kastner was charged with felony assault on a public servant, for which he later pleaded no contest in district court to the reduced charge of Class A misdemeanor assault with bodily injury. The evidence before the court substantiated Kastner's guilt, but the court deferred a finding of guilt and placed him on community supervision for two years. He did not submit to the Board proof that he had paid the fines and fees associated with the assault case. He was on probation at the time of the hearing in November 2008.

The Board had ordered Kastner in 2000 to work faithfully at suitable employment as far as possible. Kastner was unemployed a majority of the time during 2001 through 2004. Kastner was employed at Guttermaxx in Houston when, on January 19, 2006, he was terminated for insubordination for threatening his boss and calling him names. He had previously been warned for similar conduct. The record shows that Kastner had not worked for a law firm or for any employer involving the practice of law, or attended any continuing legal education, since 1999.

The Board's 2000 order required Kastner to conduct his business and personal dealings in such a way as to avoid the appearance of sacrificing ethical behavior in the interest of

7

personal gain. The record reflects that Kastner filed a civil action *pro se* representing to that court that he is a lawyer, which he is not, and asking for damages to his law license, which he does not possess. He claimed to be a lawyer at his November 2008 hearing. In other civil litigation, he requested his treating physician, Dr. Charles Covert, to alter his medical records before Kastner produced them to the opposing party: "... destroy the old record and re-write the record without the reference." Further, he was sanctioned by a Harris County district court for discovery abuse and ordered to pay attorney's fees to the Attorney General. He also had filed several actions against the Board, at least one of which had been dismissed as frivolous by a federal court.[1]

In its 2000 order, the Board ordered Kastner to abstain from using alcohol and mind-altering drugs. The record shows that he was arrested in Harris County on December 7, 2002. He had just left a bar and had consumed alcohol. His breathalyzer test revealed blood alcohol levels of .217 and .218. On February 26, 2001, he was admitted to a hospital in Colorado for treatment and

---

[1] We note for information only that this Court decided two other cases involving Kastner on August 18, 2011: *Kastner v. Texas Bd. of Law Exam'rs*, Nos. 03-10-00355-CV & 03-10-00462-CV; 2011 WL 3659146 (Tex. App.—Austin Aug. 18, 2011, no pet. h.) (mem. op.). Both opinions include the following:

> For the past decade, Kastner has been litigating claims against the State, the board of law examiners, and several of the board's present and former members, executive directors, and employees alleging they have violated various constitutional and statutory requirements in refusing to issue him a law license, despite his having passed the bar in 1999, based on the moral character and fitness requirement. These and similar complaints—including claims concerning Kastner's alleged indigence—have been litigated in numerous federal and state courts including this one. On March 2, 2010, the district court declared Kastner a vexatious litigant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.051-.54 (West 2002).

*Id.* at *1. This information was not in the Board's record, and we do not rely on it in deciding this appeal.

was diagnosed with alcohol intoxication and withdrawal. His blood alcohol level was .454. Kastner informed the hospital staff that he had been drinking almost two liters of alcohol the last four days and he did this every six to eight months. He also stated that he has depression and suicidal thoughts that occur when he is "delirium tremoring from alcohol." In medical treatment he had been advised not to drink at all. He drank alcohol on at least six occasions since his hospital release in 2002. At the 2008 hearing, he admitted that in the Board's supplemental investigation form he had admitted that he had been addicted to alcohol and that he had been treated for bipolar disorder in connection with alcohol use. He stated in a sworn affidavit in 2005, "I have not remained abstinent from alcohol or mind-altering drugs since September of 1999." He admitted that he had not attended Alcoholics Anonymous meetings with the frequency directed, and he did not keep attendance records. In his "Affidavit of Abstinence" submitted to the Board in 2008, he stated, "I will not rule out wine for health reasons or for the experience of fine wine or champagne later in life."

The Board had ordered Kastner to attend Alcoholics Anonymous ("AA") meetings at least twice a week and to document his attendance. The record does not reflect that Kastner complied. He admittedly did not do so.

In August 2001, Kastner submitted to a psychiatric evaluation by Dr. Charles Covert, a psychiatrist licensed in Texas. Kastner admitted alcoholism, drug abuse, and liver disease. Dr. Covert determined that Kastner suffered from alcohol dependence, alcohol-induced psychotic disorder, polysubstance dependence, and Bipolar I disorder. Dr. Covert diagnosed Kastner as having antisocial personality disorder, with features including passive-aggressive, self-defeating, sadistic, and paranoid personality traits. At the December 2008 hearing, Dr. Covert testified at length.

9

According to Dr. Covert, Kastner's personality disorder is incurable and untreatable. He reviewed records of Kastner's behavior from their first visit until October 2007; Dr. Covert believed those records confirmed and were consistent with his earlier diagnosis.

In its October 18, 2005 preliminary determination letter to Kastner, the Board directed Kastner to provide copies of his treatment records from another one of his doctors, Dr. Bernard Rosenberg. The Board also directed him to obtain a current psychiatric assessment and review by a psychiatrist approved by the Board. The record reflects that he did not comply with these directives.

We have attempted to decipher and address Kastner's arguments on appeal. Our review of the record leads to the conclusion that none of Kastner's complaints has merit.

Kastner argues that the curative measures suggested by the Board were permissive, not mandatory; therefore, failure to comply should not be considered. Further, he contends that the 2005 preliminary determination was "too dated to be of current value." He complains that he was not given notice of what was to be addressed at the November 24th hearing, that he was prevented from calling a witness, and that he was given insufficient time to argue his case; further, he directs many of his complaints to the January 2000 order of the Board, which is final and not subject to collateral attack, and events before that order. Kastner also attempts among other things to explain away his criminal history, lack of work history, termination from Guttermaxx and litigation related to the termination, and what he views as improper trial court rulings with respect to discovery sanctions in a civil case. Kastner also insists that "a person can be an attorney before being licensed." "[A] man with the title juris doctor who passed the state ethics and academic bar

examinations, in representing himself can call himself a lawyer." He further argues that his "citation in litigation, of damages to his law license is true."

As for his alcohol consumption, chemical dependency, lack of AA attendance, mental health issues, and related medical records, Kastner offers arguments, explanations, and excuses. He also attacks the testimony of Dr. Covert, claiming that the Board abused its discretion in calling Dr. Covert to testify and that the doctor based his testimony on false and incomplete information provided him by the Board. He also contends that the diagnoses relating to his alcohol dependence were out of date. He argues that he provided the Board with medical records of a Dr. Rosenberg, which are not in the record and which the Board refutes, but that in any event he provided Dr. Rahm Bailey's records, a physician he visited only once, and whose brief report does not address any information relating to Kastner's mental fitness.

The Board found that Kastner had not met the curative criteria it had directed in its January 2000 order. The Board found that Kastner had not met the directives in its October 18, 2005 preliminary determination letter. Altogether, the Board made thirty-seven extensive and specific findings based upon Kastner's actions and conduct since the January 2000 order. In many of these, the Board found that Kastner's conduct was indicative of dishonesty, a lack of trustworthiness in carrying out responsibilities, a lack of respect for the law, a lack of good moral character, and mental instability. The Board then made five conclusions of law based upon its findings. Ultimately, the Board determined that Kastner does not possess the present good moral character or fitness required for admission to the practice of law in Texas. We hold that substantial evidence in the record supports all the Board's findings and conclusions.

11

## CONCLUSION

We must give appropriate deference to the Board's determination of whether there is a clear and rational connection between Kastner's failure to meet his obligations under previous Board orders, his conduct since that time, and the possibility of harm to future clients or the obstruction of justice; we must affirm if there is substantial evidence supporting the Board's decision. *See Stevens*, 868 S.W.2d at 778. We hold that substantial evidence in the record supports the Board's December 2008 order finding that Kastner does not currently possess the present good moral character or fitness required for admission to the practice of law in Texas. We hold that substantial evidence in the record supports the Board's conclusion that there is a clear and rational connection between Kastner's dishonesty, lack of trustworthiness in carrying out responsibilities, lack of respect for the law, and the likelihood that Kastner would harm a client, obstruct the administration of justice, or violate the Texas Disciplinary Rules of Professional Conduct if the Board were to approve his good moral character and fitness. We hold that substantial evidence in the record supports the Board's conclusion that there is a clear and rational connection between Kastner's history of mental instability and personality disorder and the likelihood that he would fail to carry out his duties to clients, courts, or the profession or harm a client, obstruct the administration of justice, or violate the Texas Disciplinary Rules of Professional Conduct if the Board were to approve his good moral character and fitness.

We overrule Kastner's points of error and affirm the trial court's judgment.

12

_____

Marilyn Aboussie, Justice

Before Justices Puryear, Rose and Aboussie*

Affirmed

Filed:   August 31, 2011

* Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).