# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00047-CV

**City of Rice, Texas, Appellant**

**v.**

**Texas Commission on Law Enforcement Officer Standards and Education;
Timothy A. Braaten, in his Official Capacity as Executive Director of Texas Commission
on Law Enforcement Officer Standards and Education; and Nicole C. McMahan,
Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GV-09-001861, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Nicole McMahan was a police officer for appellant the City of Rice starting in October 2003. In September 2008, her employment was terminated and, as required by law, Police Chief Larry Cheek filled out an "F-5 Report of Separation of Licensee," promulgated by appellee the Texas Commission of Law Enforcement Officer Standards and Education, stating that McMahan was no longer employed by the City. Cheek stated that McMahan received a general discharge for her failure "to complete agency probation period." McMahan filed a contest, arguing she should be given an honorable discharge because she had completed her probation period and had not been the subject of disciplinary action. The Commission referred the complaint to the State Office of Administrative Hearings, and following a hearing, the ALJ found in McMahan's favor and

ordered the City to change the F-5 Report to reflect that McMahan was "honorably discharged, terminated at will." The City appealed, and the trial court affirmed the ALJ's order.

On appeal, the City contends that the trial court erred in affirming the ALJ's order, that the ALJ's order contained errors of law and was not supported by the substantial evidence, and that SOAH and the Commission abused their discretion and inappropriately superceded the City's valid exercise of authority. We affirm the trial court's judgment affirming the ALJ's order.

**Standard of Review**

The factual and procedural background of the cause is well-known to the parties, and we therefore will not recite it in great detail in this opinion. *See* Tex. R. App. P. 47.1 (appellate court opinions should be as "brief as practicable" in addressing issues necessary to final disposition), 47.4 (memorandum opinions should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it").

When a law enforcement officer's employment is terminated for any reason, the employing agency must complete a termination report informing the Commission of the officer's employment status. *See* Act of May 23, 2007, 80th Leg., R.S., ch. 1068, § 2, 2007 Tex. Gen. Laws 3681, 3682-83 (former Tex. Occ. Code § 1701.452); 37 Tex. Admin. Code § 217.7(g) (2008) (Tex. Comm'n on Law Enforcement Officer Standards & Educ., Reporting Appointment & Separation), *repealed* 34 Tex. Reg. 2153. A law-enforcement officer is "honorably discharged" if she is terminated or otherwise leaves her employment "while in good standing and not because of pending or final disciplinary actions or a documented performance problem." Former Tex. Occ. Code. § 1701.452(b)(1). A "general discharge" is warranted when termination "was related to a

2

disciplinary investigation of conduct that is not included in the definition of dishonorably discharged" or "was for a documented performance problem and was not because of . . . an at-will employment decision." *Id.* § 1701.452(b)(2).

An officer may contest a termination report. 37 Tex. Admin. Code § 217.8(a), (d) (2008) (Tex. Comm'n on Law Enforcement Officer Standards & Educ., Contesting an Employment Termination Report), *repealed* 34 Tex. Reg. 6626. When a termination report is contested, the employer law enforcement agency bears the burden of proving that the information in the termination report was correct. *Id.* § 217.8(e)); *see also* 2007 Tex. Gen. Laws at 3684 (former Tex. Occ. Code § 1701.4525(e)) (in contest of termination report based on alleged misconduct, ALJ must determine if preponderance of evidence supports finding of misconduct; if not, ALJ shall order report changed). An ALJ's final order in contest of a termination report is appealable in accordance with chapter 2001 of the government code. 37 Tex. Admin. Code § 217.8(h).

When a statute or rule allows for judicial review of an administrative decision but does not specify the standard to be applied, we apply the substantial evidence rule. Tex. Gov't Code § 2001.174. We presume that the decision is valid and supported by substantial evidence, and the complaining party bears the burden of showing otherwise. *Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 510 (Tex. App.—Austin 2007, no pet.). The test "is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). There must be more than a mere scintilla of evidence, but the evidence "may actually preponderate against the decision" and still amount to substantial evidence. *Board of Law*

*Exam's v. Coulson*, 48 S.W.3d 841, 844 (Tex. App.—Austin 2001, pet. denied). We are concerned with the reasonableness of the administrative order, not its correctness. *See State v. Public Util. Comm'n*, 883 S.W.2d 190, 203 (Tex. 1994). If reasonable minds could have reached the conclusion that the agency reached, we will uphold the decision. *Sizemore*, 759 S.W.2d at 116.

## Factual Summary

The City's Police Department Policy Manual provides for an "initial probationary period of one (1) year for police officers" that "shall be served following actual employment by the Department." It also states that a "probationary employee shall be privately advised of the reasons for his discipline or discharge." An "employee" is defined as "[a]ll personnel employed by the Rice Police Department, including sworn and civilian, and paid or volunteer personnel." A "sworn employee" is "[a]ll sworn (commissioned) employees, including Reserve Officers." "Probationary period" is defined as the "time during which an employee is on trial (working test period) and is expected to prove their complete fitness for their position."

The administrative record reflects that in October 2003, McMahan was hired by then-Chief James McDuffie as an unpaid reserve officer.[1] In June 2005, while still an unpaid reserve officer for the City, McMahan became Chief of Police for the City of Dawson. Although the City's Police Department's policies barred officers from having "a deputation or a commission from any other law enforcement agency," McMahan sought and received approval to maintain both jobs from McDuffie. Further, McDuffie's successor, John Ellington, the mayor, and the city council were

---

[1] McMahan first worked for the City in July 2001, but she left about six months later, in January 2002, to take employment elsewhere, returning in October 2003.

4

aware of McMahan's dual employment. In October 2006, Ellington told McMahan that he had obtained funding to begin paying her part-time, and on November 1, 2007, she was brought on full-time; she resigned from the City of Dawson when she began to work full-time for the City. Ellington resigned in early 2008, and on September 25, 2008, his successor, Larry Cheek, fired McMahan.

Ellington testified that he believed McMahan had completed her year of probation from October 2003 to October 2004, while she was a part-time reserve officer. During that year, McMahan completed her field training program, and in October 2004, she was "released from probation, released from any field training." Ellington testified that a "field training officer's manual" is used to train a new police officer "through a probationary period" and that McMahan's file included her "completed FTO manual," showing "the fact that her probation was complete." However, Ellington admitted that the Police Department's policy manual did not state that a completed FTO manual meant that an officer had completed the one-year probation period. He testified that McMahan was "a very reliable officer, a knowledgeable officer," and that he "had no problems or complaints whatsoever with [her] performance of [her] duties at any time." Ellington also provided a letter stating that McMahan successfully completed a 240-hour field training program, which was her "initial field training and probation period," starting in October 2003, and that when she was hired full-time on November 1, 2007, she "was not on any sort of probation." On the F-5 Report, Cheek stated that McMahan was hired October 18, 2003.

McMahan testified that when she was hired by the City in October 2003, she "underwent a FTO program" for one year and that, in October 2004, "I had completed my training, completed my probation to the best of my knowledge, from what I read in the policy and what was

5

told to me." She was released "with my own vehicle and a shift to work." When she was hired full-time on November 1, 2007, "[i]t was never explained to me that I was back on probation or even on probation to begin with. Because every—everything I had completed years prior."

Cheek testified that McMahan did not complete her probationary period while she was a part-time reserve officer. He testified that the policy manual included unpaid officers in its definition of "employee" for insurance purposes only, and that an officer had to be a full-time, paid employee to be considered to be in her probationary period. Although the manual does not define "actual employment," the City's mayor testified that the term was intended to "separate the volunteers and the part-time employees."

**Discussion**

The City argues that the ALJ's order is not based on substantial evidence because McMahan was not a full-time employed officer, and therefore not "actually employed," until November 1, 2007, and her firing in September 2008 was therefore within the one-year probationary period. We disagree.

The City's police department policy manual includes reserve officers in its definition of "employees."[2] Ellington believed McMahan had completed the probationary period in 2004,

---

[2] The City argues that because "actual employment" is not defined in the policy manual, we should look to the common meaning of the phrase, which it asserts requires that a person be paid to be considered employed. *See* Black's Law Dictionary 604 (9th ed. 2009) (including within definition of "employment" "[w]ork for which one has been hired and is being paid by an employer"). However, the only word not defined is "actual," not "employee." Further, although the supreme court has held that an unpaid police officer is not an employee under the Texas Tort Claims Act, the Act specifically defines an employee as a person "in the paid service of a governmental unit." *Harris County v. Dillard*, 883 S.W.2d 166, 167 (Tex. 1994). In this case, the police department's policy manual defines "employee" to *include* unpaid reserve officers.

when she completed her Field Officer Training manual after one year of reserve employment, and McMahan believed the same. The record does not reflect that McMahan was informed in any way that when she was hired full-time in 2008, she was subject to a new probationary period. Although Cheek and the City's mayor testified that McMahan was subject to a year of probation that began in 2008 and that reserve officers were only included in the policy manual's definition of "employee" for insurance purposes, more than a mere scintilla of evidence supports the ALJ's determination that McMahan completed her probation in 2004. And, although the City argues that McMahan's holding of another commission during her time as a reserve officer would have been in violation of the policy manual, McMahan sought and obtained permission to hold the dual commissions from McDuffie, Ellington approved of the dual employment, and the mayor and city council were aware of her employment situation. Because substantial evidence supports the ALJ's findings, we affirm the trial court's judgment affirming the ALJ's order.

## Conclusion

We have held that the trial court did not err in affirming the ALJ's order. Due to our resolution of the City's issue related to McMahan's probation period, we need not address its complaint that McMahan's failure to complete her probationary period was the "most appropriate reason" for her discharge available on the Commission-promulgated F-5 form.[3] Nor need we consider

---

[3] Although the occupations code provides that a law-enforcement officer must be considered honorably discharged if she is terminated "while in good standing and not because of pending or final disciplinary actions or a documented performance problem," and that a general discharge is only warranted if termination related to "a disciplinary investigation of conduct" or "a documented performance problem," Tex. Occ. Code § 1701.452(b)(2), the Commission's F-5 form only includes "[f]ailed to complete agency probation period" as a reason for termination under general discharge, not under the honorable discharge section.

its complaints related to the Commission's plea to the jurisdiction.[4]  Although we agree with the City that the ALJ's Finding of Fact 12, which states McMahan was never a probationary employee, is incorrect because McMahan was subject to a year probation period starting in October 2003, this minor error does not change our analysis, and ordering it corrected would serve no purpose.  We affirm the trial court's judgment affirming the ALJ's order requiring the City to change McMahan's F-5 report to reflect an honorable discharge.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   June 21, 2013

---

[4]  The Commission has declined to take a position on the merits of this dispute and did not file a brief or otherwise participate before the trial court or on appeal.